874 A.2d 12

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lynn E. KYLE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 2004.

Decided May 16, 2005.

Michael Anthony Dinges, Philadelphia, Robert W. Terrell, III, Kenneth A. Osokow, for Commonwealth of Pennsylvania.

Gregory Scott Gardner, Williamsport, for Lynn E. Kyle.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

**OPINION**

Justice CASTILLE.

This Court granted discretionary review to consider whether an individual is in custody for purposes of awarding credit toward a prison sentence for time spent subject to home confinement with electronic monitoring while released on bail pending appeal. The Post Conviction Relief Act ("PCRA") court determined that appellee was not entitled to credit. The Superior Court vacated that determination and remanded for an evidentiary hearing. For the reasons set forth below, we find that appellee is not entitled to sentencing credit toward his prison sentence for time he spent at home on bail subject to electronic monitoring. Accordingly, we reverse the Superior Court's remand order and reinstate the order of the PCRA court, denying relief.

On June 6, 2000, following a jury trial in Lycoming County, appellee, who had a history of convictions for driving under the influence of alcohol ("DUI"), was again convicted of DUI, under 75 Pa.C.S. § 3731(a)(1) (under the influence of alcohol to a degree which renders the person incapable of safe driving) and § 3731(a)(4) (amount of alcohol, by weight in the blood, is 0.10% or greater).[1] Appellee was permitted to remain on bail pending sentencing with the condition that he maintain alcohol counseling and consume no alcoholic beverages. On September 6, 2000, appellee was sentenced to a structured sentence, consisting of placement in the Lycoming County Intermediate Punishment Program for a term of two years.[2] The court directed that the first two months be

---

1. 75 Pa.C.S. § 3731 was repealed subsequent to appellee's conviction and the decisions on appeal. It has been replaced with 75 Pa.C.S. § 3802.

    Appellee was also convicted of reckless driving, 75 Pa.C.S. § 3736(a), and accidents involving damage to property, 75 Pa.C.S. § 3745(a). The sentences imposed for those convictions are not challenged on this appeal.

2. 42 Pa.C.S. § 9763(c) authorizes a sentencing court to impose intermediate punishment as part of a sentence for DUI. Pursuant to that

served in prison, at the Pre–Release Center in Lycoming County, with eligibility for in-home detention for the final fifteen days of the Pre–Release Center time. Under the conditions of the Intermediate Punishment Program, appellee was required to attend and successfully complete the Alcohol Highway Safety School, undergo an evaluation by a licensed drug and alcohol treatment provider and pursue treatment as recommended. Appellee was further required to continue the counseling that was already in place for him and to perform fifty hours of community service.

Appellee appealed his conviction to the Superior Court on October 5, 2000, arguing that there was insufficient evidence to sustain the verdict and that the verdict was against the weight of the evidence. Appellee was allowed to remain free on $2,000 bond pending that appeal, with the condition that he not consume alcoholic beverages. On December 1, 2000, the Commonwealth filed a petition to revoke bail because appellee had been drinking alcoholic beverages, in violation of his bail terms. On December 5, 2000, following a conference on the petition and an agreement between the Commonwealth and appellee, appellee was placed on the Lycoming County Intensive Supervised Bail Program utilizing home confinement with electronic monitoring. The Superior Court affirmed appellee's conviction on August 6, 2001, but he remained on electronic monitoring for a total of 268 days, until August 29, 2001.

On August 31, 2001, appellee filed a motion for clarification of sentence, requesting credit for the 268 days he had spent on electronic monitoring toward the two-month imprisonment portion of his sentence. Appellee argued he was entitled to credit for time served based upon this Court's fractured

intermediate punishment, the court may attach any of a number of conditions upon the defendant as it deems necessary. These conditions include, but are not limited to: participation in a public or nonprofit community service program, individual or family counseling, refraining from possession of a firearm or other dangerous weapon, participation in drug or alcohol screening and treatment programs, and restriction to the premises of one's residence during hours designated by the court. 42 Pa.C.S. § 9763(b)(1)-(17); *accord* 37 Pa.Code § 451.51. The Pennsylvania Code also sets forth the various levels of intermediate punishment. 204 Pa.Code § 303.12.

decision in *Commonwealth v. Chiappini,* 566 Pa. 507, 782 A.2d 490 (2001), which was filed on July 23, 2001. On September 18, 2001, the trial court denied appellee's motion, finding that even if *Chiappini* could be construed to require sentencing credit, it should not be applied retroactively. The trial court stated that, "[n]o one anticipated that [the intensive supervised bail with electronic monitoring] program would be considered 'custody' for purposes of credit for time served. If the court realized the defendant could be entitled to credit, it simply would have revoked the defendant's bail based on the defendant's consumption of alcohol in violation of his conditions of bail." R., Doc. 24, at 2. The trial court determined that allowing appellee sentencing credit for time he spent at his home subject to bail and electronic monitoring would reward him for his initial bail violation. The trial court also noted that appellee's only remaining avenue of relief from his sentence was to file a petition under the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.*

Appellee duly filed a PCRA petition on October 12, 2001, requesting sentencing credit for the 268 days he spent subject to electronic monitoring or, in the alternative, 38 days, representing the time he spent on electronic monitoring after the *Chiappini* decision was issued. The petition was denied on November 27, 2001. At that time, the trial court also denied bail pending PCRA appeal and ordered appellee to begin serving his sentence on December 10, 2001. On November 28, 2001, appellee appealed to the Superior Court and filed an application for bail. On December 10, 2001, appellee reported to the Warden of the Lycoming County Prison to begin serving his sentence, but on December 21, 2001, the Superior Court ordered that he be released on reasonable bail pending his PCRA appeal. Appellee was released on December 27, 2001.

In his PCRA appeal to the Superior Court, appellee argued that he should receive credit, pursuant to 42 Pa.C.S. § 9760 (credit for time served awarded for time spent in "custody"), for the 268 days he was released on bail subject to electronic monitoring at his home. Appellee argued that this Court had

announced in *Chiappini* that a defendant is entitled to credit against his sentence for time served on a home electronic monitoring program, because such a program constitutes custody. Appellee further argued that the electronic monitoring program he participated in was "virtually identical" to the program addressed in *Chiappini*. The Commonwealth countered that the "custody" reasoning of the lead opinion in *Chiappini* was embraced by only three Justices, while four Justices disagreed on that point and concluded that home confinement does not constitute custody. The Commonwealth also submitted that appellee was not entitled to sentencing credit on the basis of equitable principles.

On April 8, 2003, the Superior Court, in an unpublished memorandum opinion, found that this Court had addressed the same issue in *Chiappini* and that the Superior Court had interpreted *Chiappini* in *Commonwealth v. Vanskiver*, 819 A.2d 69 (Pa.Super.2003) (*en banc*), to hold that each electronic monitoring program must be evaluated on a county-by-county basis to determine if credit was warranted. The Superior Court further found that no evidence had been adduced at the PCRA hearing concerning the specific conditions of the electronic monitoring program to which appellee was subject. The Superior Court therefore vacated the PCRA court's order denying relief and remanded for an evidentiary hearing, regarding the nature of the Lycoming County program, to determine whether it constituted custody for purposes of Section 9760.

Judge Graci filed a concurring statement, noting that his concurrence was commanded by the fact that the Superior Court decision in *Vanskiver* had elevated the non-binding plurality opinion in *Chiappini* to precedential status. Judge Graci further noted that, but for the decision in *Vanskiver*, the Commonwealth should have prevailed because the majority of Justices in *Chiappini* had rejected the argument that time spent in an electronic monitoring program at home should be credited against a prison sentence. Judge Graci opined that *Vanskiver* had been wrongly decided, but recognized that he was bound by it as a majority *en banc* decision.

This Court granted the Commonwealth's petition for allowance of appeal to determine if sentencing credit is due under Section 9760 for time spent at home on electronic monitoring as a condition of release on bail pending appeal.

The Commonwealth here argues, as it did below, that the *Vanskiver* case, which controlled the outcome below, was wrongly decided because it relied upon the lead opinion in *Chiappini*, which did not command a majority of the Court. The Commonwealth notes that the majority of Justices in *Chiappini* concluded that an individual is not entitled to sentencing credit for time spent at home on electronic monitoring because that form of release does not constitute custody. The Commonwealth looks to the four responsive opinions in *Chiappini* for support of its argument that, instead of relying on *Vanskiver* and the *Chiappini* lead opinion, the Superior Court should have looked to *Commonwealth v. Shartle*, 438 Pa.Super. 403, 652 A.2d 874 (1995), *appeal denied*, 541 Pa. 637, 663 A.2d 690 (1995), which held that house arrest cannot be credited toward prison time because it does not constitute time served in an institutional setting. *Shartle* in turn relied on this Court's decisions in *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991) (generally, credit not due for time spent on home monitoring, but for equitable reasons, credit awarded), and *Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991) (credit awarded for time spent in voluntary inpatient alcohol rehabilitation, an institutional setting). The Commonwealth argues that the decisions in *Shartle, Kriston,* and *Conahan,* as well as the dissenting opinion of Judge Graci in *Vanskiver,* instruct that time spent in "custody" means time spent in an "institutional setting," not time spent confined to the comforts of one's home. Accordingly, the Commonwealth avers that appellee is not entitled to credit against his sentence of incarceration for time he spent at home subject to bail restrictions.

The Commonwealth further argues that this Court's decision in *Commonwealth v. Wegley,* 574 Pa. 190, 829 A.2d 1148 (2003) (for purposes of escape statute, sentence of electronic monitoring constitutes detainment), as well as the bail rules,

specifically Pa.R.Crim.P. 527 (listing nonmonetary conditions of release on bail, including home confinement), provide support for its position that electronic monitoring, when imposed as a condition of bail, does not constitute custody and does not entitle one to sentencing credit. The Commonwealth posits that one who is "released" on bail simply cannot be deemed to be in "custody." The Commonwealth asserts that the Superior Court's determination that home monitoring is equivalent to custody for sentencing credit purposes will erroneously result in two individuals on home monitoring being treated differently, depending on whether electronic monitoring is a condition of probation or a part of intermediate punishment. The Commonwealth argues that it would be anomalous to conclude that the General Assembly intended one to be deemed in custody for purposes of credit against his sentence when the home monitoring was imposed as a condition of bail. Finally, the Commonwealth highlights the practical difficulties of the Superior Court's decision, namely that it requires a case-by-case, county-by-county determination, which is likely to lead to inconsistent results. A bright-line rule prohibiting the award of sentencing credit for time spent in home confinement, the Commonwealth suggests, would avoid such difficulties.

Appellee responds that the Commonwealth has misstated the true question involved. Appellee argues that the Superior Court did not hold that an individual released on bail pending appeal is entitled to credit for time spent at home on electronic monitoring. Rather, the Superior Court remanded for a hearing to develop the record. Appellee urges that the remand should be allowed to proceed, for purposes of developing the record. In the alternative, appellee states that the issue, as presented by the Commonwealth, has already been decided in his favor in *Chiappini*.[3]

3. Appellee does not indicate in his brief whether he seeks credit toward the entire two-year intermediate sentence, including the two-month prison sentence, or whether he seeks credit toward the prison time only. Moreover, neither the Commonwealth nor the courts below have drawn any such distinction. In appellee's Motion for Clarification of Sentence, filed with the trial court on August 31, 2001, he requested

632

The issue of whether an individual is entitled to sentencing credit against a term of incarceration for time spent on bail release subject to electronic home monitoring is primarily one of statutory construction. Therefore, this Court's review is plenary and we owe no deference to the lower courts' legal conclusions. *See, e.g., Department of Trans. v. Taylor*, 576 Pa. 622, 841 A.2d 108 (2004). Pursuant to the Pennsylvania Sentencing Code, 42 Pa.C.S. § 9701, *et seq.*, credit for time served is awarded as follows:

> Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1). The easiest application of this statutory provision is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where appellee spent time released on bail, but subject to electronic home monitoring, rather than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in a prison. To better understand how these forms of control fit into the Code's "custody" rubric, we turn to past decisions of this Court for guidance.

This Court was first asked to determine whether a DUI offender was entitled to credit for time spent on electronic monitoring, toward a mandatory minimum prison sentence, in *Kriston*, 527 Pa. 90, 588 A.2d 898. The *Kriston* Court focused

credit only "against the sentence of incarceration of two ... months." R. Doc. 21, at 1.

on the plain meaning of the term "imprisonment," as used in the DUI statute in reference to the mandatory minimum sentence, and concluded that "[w]e believe it would grossly distort the language used by the legislature if we were to conclude that the term 'imprisonment' means merely 'staying at home.' The plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative *institution*, not staying at home." *Id.* at 899 (emphasis original). Despite the *Kriston* Court's finding that the statutory construct did not require that time spent on electronic monitoring be credited toward a prison sentence, the Court noted that "[b]efore entering the electronic home monitoring program, [Kriston] was *assured* by prison authorities that time spent in the monitoring program would count towards his minimum sentence." *Id.* at 901 (emphasis original). Taking into account "considerations of fundamental fairness," this Court determined that "denying [Kriston] credit for time served in home monitoring would constitute a manifest injustice." *Id.* Accordingly, this Court held that Kriston was entitled to credit against a required prison sentence for the time he spent on electronic monitoring, essentially, as an equitable matter.

This Court again addressed credit toward a DUI minimum prison sentence, for time spent on electronic monitoring, in *Conahan*, 527 Pa. 199, 589 A.2d 1107. In *Conahan*, the defendant voluntarily committed himself to an inpatient treatment program for alcoholism, soon after his DUI arrest. The trial court ultimately credited the time Conahan spent in the facility against the mandatory prison sentence he faced as a second-time DUI offender. The issue on appeal was whether the court had the discretion to award such credit for time voluntarily spent in such an institutional setting. This Court held that the trial court did have such discretionary power. *Id.* at 1110. In so holding, the Court considered not only the meaning of the word "imprisonment," but also the term "custody," as used in Section 9760 for purposes of sentencing credit. The Court, looking for guidance to *Kriston*, stated that "[p]ursuant to [Section 9760], a defendant may be given a credit for time spent in custody, and we firmly believe that

'custody' in this sense includes time spent in institutionalized rehabilitation and treatment programs." *Id.* at 1109. Accordingly, this Court determined that the trial court did not err in holding that Conahan was entitled to sentencing credit.

After this Court's decisions in *Kriston* and *Conahan,* the Superior Court addressed a similar matter in *Shartle,* 438 Pa.Super. 403, 652 A.2d 874, where credit was sought for time spent released on electronic monitoring prior to trial. Relying on *Kriston* and *Conahan,* the *Shartle* court found that Shartle's pre-trial release to home confinement was not the equivalent of time served in an institutional setting, and therefore did not meet the statutory requirement of "custody" under Section 9760. Accordingly, the court held that Shartle was not entitled to sentencing credit for time spent on electronic monitoring.

It is clear that, for over a decade, Pennsylvania appellate courts have determined, as a matter of statutory construction, that criminal defendants are not entitled to credit against a sentence of imprisonment for time spent subject to home monitoring programs. *See Kriston,* 527 Pa. 90, 588 A.2d 898. Courts have interpreted the word "custody," as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility. *See, e.g., Conahan,* 527 Pa. 199, 589 A.2d 1107; *accord Commonwealth v. Usher,* 264 Pa.Super. 435, 399 A.2d 1129 (1979) (juvenile entitled to credit for time spent in residential drug and alcohol treatment program); *Commonwealth v. Jones,* 211 Pa.Super. 366, 236 A.2d 834 (1967) (credit awarded for time spent pre-trial in a state hospital upon commitment for mental health evaluation). This Court has emphasized that, because home release on electronic monitoring does not constitute custody, credit should not be awarded for it toward a prison sentence. Exceptions to this rule have been recognized only where equity was deemed to require it, such as when a defendant was assured that his time spent on electronic monitoring would count toward his sentence. *See, e.g., Kriston,* 527 Pa. 90, 588 A.2d 898.

The next opportunity this Court had to address credit for time spent subject to electronic monitoring was in *Chiappini,* 566 Pa. 507, 782 A.2d 490. Because the parties focus their arguments on *Chiappini,* and because the interpretation of that decision seems to be the source of some confusion regarding the law on credit for time served, it warrants careful examination.

*Chiappini* posed two distinct issues, one involving the common law spousal privilege, and the other involving credit for time spent on electronic home monitoring. The lead opinion by Mr. Justice Zappala commanded a majority view on the privilege issue.[4] The Court fractured, however, on the home confinement/sentencing credit issue. The lead opinion, which was joined by then-Chief Justice Flaherty and Madame Justice Newman, would have found, as a matter of statutory construction, that Chiappini was entitled to credit for the time spent subject to home confinement. The remaining four Justices, however, were of the view that an individual who has spent time in home confinement with electronic monitoring is generally not entitled to credit toward a prison sentence because an individual in such a program is not in custody. *Id.* at 502 (Nigro, J., concurring); 502–03 (Cappy, J., concurring and dissenting); 503–07 (Castille, J., concurring and dissenting, joined by Saylor, J.); 507–08 (Saylor, J., concurring and dissenting). Mr. Justice Nigro, however, provided a fourth vote to award sentencing credit for the time spent in home confinement in that particular case, but solely based on equitable reasons. *See id.* at 502 (Nigro, J., concurring). Thus, a four-Justice majority of the Court shared the same interpretation of the statute, *i.e.,* that an individual who has spent time on home confinement with electronic monitoring has not spent time in custody and is not entitled to credit for time served.

The facts in *Chiappini* were as follows. Chiappini set fire to a house and was subsequently charged with and found guilty of arson, risking a catastrophe and recklessly endangering another person. During the pendency of post-verdict

---

4. This author's Concurring and Dissenting Opinion joined the three-Justice opinion on the privilege issue.

motions, Chiappini was subject to a home confinement and electronic monitoring program. It seems that he remained subject to the program after the trial court granted his post-verdict motions and ordered a new trial, after the second trial resulted in a guilty verdict, following the denial of post-verdict motions and after imposition of sentence. Subsequent to the second guilty verdict, the Commonwealth sought to remove electronic monitoring from Chiappini's bail conditions, apparently in order to prevent Chiappini from receiving sentencing credit for any more time spent on electronic monitoring, which the Commonwealth believed would be credited to him. Upon Chiappini's motion for credit for time served, the trial court initially allowed credit for the 518 days he spent on electronic monitoring. The trial court later rescinded that credit, however, based upon the Superior Court's intervening decision in *Shartle*, 438 Pa.Super. 403, 652 A.2d 874. The Superior Court affirmed.

In his lead opinion, Justice Zappala framed the issue as "whether the time [Chiappini] spent subject to the home confinement/electronic monitoring program constitutes 'time spent in custody,'" as stated in Section 9760. *Chiappini*, 782 A.2d at 498. The lead opinion recognized the inherent complication that Section 9760 did not define the term "custody." The lead opinion then reviewed *Kriston, Conahan,* and *Shartle,* and concluded that none of those cases were dispositive.

The lead opinion stated that the terms imprisonment and custody are synonymous, but not identical, as "custody" was broader, with "imprisonment" being but one type of custody. The lead opinion suggested a case-by-case test for determining whether a person on an electronic monitoring program has spent time in Section 9760 custody, which would require the examination of the extent of control exercised by those in authority in the program. Applying that test, the lead opinion found that the electronic monitoring program governing Chiappini "made it possible for prison authorities to restrain and severely limit a person's freedom by limiting his ability to move about freely to the confines of his home. The restrictions placed upon Appellant here went well beyond the restric-

tions typically employed by a court in releasing a defendant on his own recognizance or upon a condition that a defendant not leave the jurisdiction of the court." *Id.* at 501. Accordingly, the lead opinion would have found that Chiappini was in custody for purposes of Section 9760, when he was confined to his home subject to electronic monitoring, and thus was entitled to sentencing credit.

In his Concurring Opinion, Mr. Justice Nigro stated that he would "generally frown upon a process that allows people to serve sentences in the comforts of their own home," and that he agreed with the *Shartle* court that "time spent in 'custody' must be the 'equivalent of time served in an institutional setting.'" However, Justice Nigro concurred in the award of sentencing credit because he believed that Chiappini should, "on the basis of equity, receive credit for the 518 days he spent on the electronic monitoring program." *Id.* at 502 (Nigro, J., concurring). The Concurring and Dissenting Opinion by Mr. Justice Cappy (now-Chief Justice) noted that, "[w]here a defendant is permitted pretrial bail with home monitoring as a condition thereof, I do not believe that the defendant is then entitled to credit on his sentence for time spent at home." *Id.* at 503 (Cappy, J., concurring and dissenting). Mr. Justice Saylor, in his separate Concurring and Dissenting Opinion, noted that, "I do not believe the legislature intended that a defendant who has been sentenced to a period of total confinement in a state correctional institution should receive credit against such sentence for time spent in a home confinement/electronic monitoring program pursuant to the terms of a bail order prior to trial and/or pending appeal." Justice Saylor further opined that, as this Court had stated in *Kriston*, sentences of imprisonment are to be served in institutional settings, and he noted that a similar understanding prevails in the federal system. *Id.* at 508 (Saylor, J., concurring and dissenting).[5] In a third concurring and dissenting

**5.** Both Justice Cappy and Justice Saylor left open the possibility that an award of credit might be appropriate in some extreme cases, but neither believed that the circumstances in *Chiappini* warranted such an award. *See id.* at 503 n. 1 (Cappy, J., concurring and dissenting); at 508 n. 1 (Saylor, J., concurring and dissenting).

opinion, which was joined by Justice Saylor, this author also separately opined that credit cannot be awarded for time spent in electronic monitoring, as a condition of bail, toward a prison sentence. This author noted, among other things, that the reasoning in *Kriston* and *Conahan* commanded this result, as well as the practical and fundamental difference between bail release to one's home and incarceration in an institutional setting. *Id.* at 503–07 (Castille, J., concurring and dissenting).

In summary, the proposed case-by-case test for credit for time served, as set forth by the lead opinion in *Chiappini*, was not endorsed by a majority of the Court and lacks precedential status. Rather, on the question of statutory construction, the legal position taken by the four remaining Justices, which comported with this Court's prior decisions in *Kriston* and *Conahan*, prevailed.

Today, we make clear that time spent on bail release, subject to electronic monitoring, does not qualify as custody for purposes of Section 9760 credit against a sentence of incarceration. As this author noted in *Chiappini:*

> [T]he reality here is that [appellee] was subject to the home confinement/electronic monitoring program as a condition of his release on **bail**. Bail is neither a form of, nor in any way synonymous with, custody or imprisonment; rather, it is a form of **release** from custody.

*Id.* at 503 (Castille, J., concurring and dissenting). Bail conditions are discussed in Pennsylvania Rule of Criminal Procedure 527, entitled "Nonmonetary Conditions of **Release** on Bail." Pa.R.Crim.P. 527 (emphasis added). The Rule, as suggested by its title, addresses release, which cannot be equated with either custody or imprisonment. The Rule lists the categories of nonmonetary conditions that the bail authority may impose, including reporting requirements, restrictions on travel, and "any other appropriate conditions designed to ensure the defendant's appearance and compliance with the conditions of the bail bond." Pa.R.Crim.P. 527(A). The Comment to Rule 527 provides a list of other suggested bail conditions, including, specifically, "restricting the defendant to his or her residence." Pa.R.Crim.P. 527, Comment.

As this author further noted in *Chiappini*, "it is difficult to see how a defendant whom the rules permit to be **released** on bail can be said to be 'in custody' for purposes of any later imposition of sentence and awarding of credit for 'time served' against a prison term." *Chiappini*, 782 A.2d at 503 (Castille, J., concurring and dissenting). Although electronic monitoring certainly involves restriction upon one's freedom during release on bail, so too do several other common bail conditions (such as surrendering a passport, a stay-away order, drug testing or a reporting requirement), which defendants often welcome, and even request, as a desirable means of avoiding placement in actual custody in an institutional prison setting. This Court has highlighted the distinctly non-institutional nature of home monitoring programs. *See Wegley*, 829 A.2d at 1151 (discussing *Kriston*, *Conahan* and *Commonwealth v. Koskey*, 571 Pa. 241, 812 A.2d 509 (2002)).[6] *Wegley* cited with approval to a Maryland case which cogently exposed the differences between confinement at home and incarceration:

> [W]hile at home, an offender enjoys unrestricted freedom of activity, movement, and association. He can eat, sleep, make phone calls, watch television, and entertain guests at his leisure. Furthermore, an offender confined to his home does not suffer the same surveillance and lack of privacy that he would if he were actually incarcerated.

829 A.2d at 1152 (quoting *Schlossman v. State*, 105 Md.App. 277, 659 A.2d 371, 383 (1995)); *accord Chiappini*, 782 A.2d at 504 (Castille, J., concurring and dissenting) ("A defendant in a home confinement program is free to move about in his home, eat, watch television, sleep in his own bed, socialize with family and friends and otherwise enjoy the comforts of his home at will. [Such confinement] in no way approaches being ordered to pack a few belongings, leave that home, and report to a prison cell."). To equate the electronic monitoring restriction with custody, especially in a case such as this one where

---

**6.** The question in *Wegley* was whether an intermediate punishment sentence of home monitoring constituted official "detention" for purposes of the escape statute. The case nevertheless includes a useful discussion of the line of cases at issue here, and corroborates the characterization in text. *Wegley*, 829 A.2d at 1151–52.

appellee agreed to the restriction, presumably as a means of avoiding incarceration, ignores the very nature of bail, whereby some type of restriction is almost always imposed. Plainly stated, an individual who is released from custody cannot be said to be in custody.

Furthermore, requiring sentencing courts to credit time spent at home as if it were the equivalent of incarceration may well lead trial courts to simply deny release on bail at all. Incarceration in an institutional setting is different in kind, not in mere degree, from "confinement" to the comforts of one's home. Sentences, and particularly relatively short sentences such as is at issue here, can be designed to punish, to rehabilitate, and to teach lessons and personal responsibility. In this case, it is clear that the trial court intended appellee to spend at least forty five days in a prison. As the trial court noted, to require the court to reduce appellee's punishment by eliminating the mandatory minimum prison sentence for DUI would unjustly reward appellee for his initial bail violation. Trial courts are vested with considerable discretion concerning release before trial and pending appeal. Once trial courts recognize the unintended windfall that would result from permitting conditional release on bail in an instance such as this one, they might be less likely to grant such requests. One of the benefits of home monitoring is the flexibility it affords the defendant and the court. If a court is to be required to pretend that such release is a period of incarceration, it may determine that actual incarceration, rather than bail release, is the only way to ensure service of an appropriate punishment.

Our conclusion logically follows from *Kriston* and *Conahan,* as well as the Superior Court's decision in *Shartle,* which we have discussed above.[7] Release on any form of bail necessari-

7. The distinctions of *Kriston* and *Conahan* posed by the lead opinion in *Chiappini* are unpersuasive. The lead opinion argued that the *Shartle* court erred because *Kriston* and *Conahan* were not controlling, as they were solely concerned with the interpretation of the term "imprisonment" under the DUI statute, rather than the interpretation of the word "custody" for purposes of Section 9760. We note, first, that although *Kriston* addressed only the meaning of "imprisonment" in the DUI

ly restricts one's liberty, but release to one's home on bail subject to electronic monitoring does not reach the level of restriction that necessarily attends placement in an institutional setting. Accordingly, we hold that time spent subject to electronic monitoring at home is not time spent in "custody" for purposes of credit under Section 9760. The case-by-case test proposed by the lead opinion in *Chiappini* is specifically disapproved. This interpretation and resulting bright-line rule will obviate the necessity of evidentiary hearings into the particulars of each electronic monitoring program around the Commonwealth, which would be necessary to implement a case-by-case test. *See Vanskiver,* 819 A.2d at 79 (Graci, J., concurring). This holding also has the salutary benefit of avoiding inconsistent results in these matters, based on perceived nuances in various programs across the Commonwealth.

What remains is a consideration of whether there are equitable factors which weigh against giving force to our conclusion on this matter of statutory construction.[8] In the past, credit has been awarded for time spent on electronic monitoring based upon equitable circumstances. *See Kriston* (assurance by prison authorities that time spent in monitoring program would count toward prison sentence); *Chiappini* (Nigro, J., concurring); *see also Jacobs v. Robinson,* 49 Pa. Cmwlth. 194, 410 A.2d 959 (1980) (convict inadvertently released from prison because of clerical error awarded credit for time spent at large in community, under supervision of probation authorities). Appellee has not argued that such an equitable circumstance is present here and the record reveals that none exists. Unlike *Chiappini,* there is no suggestion that the parties believed that sentencing credit would be available.[9]

statute, *Conahan* addressed both "imprisonment" and "custody" as used in Section 9760. In any event, whether we consider Section 9760 or the Sentencing Code requirements, the question is the same— whether credit for time served should be awarded based upon time spent in home confinement—and the result must also be consistent.

8. We note that this case poses no challenge to the propriety of considering equitable factors, such as powered the decision in *Kriston.*

9. We also note that appellee here was subject to home confinement for 268 days, slightly more than half the period at issue in *Chiappini.*

Nor did the trial court lead appellee to believe he would receive sentencing credit. Furthermore, the very fact that four Justices wrote separately in *Chiappini* to explain their view that monitoring programs are not "custody" for purposes of credit against a prison term, combined with this Court's previous decisions in *Kriston* and *Conahan*, served to reduce, if not eliminate, the prospect that a defendant could have a reasonable expectation of an entitlement to such credit. As a practical matter, defendants now must choose whether to accept the condition that they post bail and spend time on electronic monitoring, should the court so require—in which case credit will not be awarded—or to forgo release on bail restriction and immediately serve their prison sentences—for which credit will be available.

We also necessarily conclude that *Vanskiver* was wrongly decided to the extent it applied the case-by-case test proposed by the *Chiappini* lead opinion. Although the *Vanskiver* court may have reached the proper result, that result was premised upon its erroneous belief that the *Chiappini* lead opinion was controlling law.[10] The *Vanskiver* line of cases is hereby disapproved.

Accordingly, we hold that the Superior Court erred as a matter of law in remanding this case to the PCRA Court for further evidentiary hearings, based on the *Chiappini* lead opinion's case-by-case approach.[11] There was no need to

---

10. We note that the Superior Court has continued to apply the case-by-case test set forth in the *Chiappini* lead opinion. *See Commonwealth v. Druce,* 868 A.2d 1232 (Pa.Super.2005) (relying upon *Vanskiver* and *Chiappini* in applying case-by-case test and determining that Druce was not entitled to credit for time spent on electronic monitoring); *Commonwealth v. McCalman,* 795 A.2d 412, 418–19 (Pa.Super.2002) (stating that, *"Chiappini* ... held that a home monitoring program constitutes time spent in 'custody' for purposes of [Section] 9760," and awarding credit for eighteen days spent in home confinement to an individual sentenced to seventy seven to one hundred fifty four months of incarceration).

11. Appellee is correct that the Superior Court did not hold that credit for time served was due, but rather, merely remanded for further findings to that end. However, implicit in that order is the Superior Court's position that in some instances, credit for time served could be awarded to an individual who had spent time subject to electronic

remand because, regardless of what facts might be found on remand, as a matter of law credit cannot be awarded toward a prison sentence for time spent released on bail, subject to electronic monitoring, in the circumstances presented here. We therefore reverse the Superior Court and reinstate the order of the PCRA court, denying appellee relief in the form of sentencing credit.

Justice NEWMAN files a dissenting opinion.

Justice NEWMAN, Dissenting Opinion.

As the sole remaining Justice on the Court to have joined the lead Opinion in *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), I must respectfully dissent from the decision reached by the Majority. Today, the Majority has discarded the case-by-case test outlined in *Chiappini*, and instead adopted a bright-line rule unconditionally stating that a defendant is not in "custody" for purposes of awarding sentencing credit for time spent subject to home confinement with electronic monitoring. However, I truly believe that the case-by-case approach adopted by the lead Opinion in *Chiappini*, which carefully analyzes a specific home confinement program before rendering judgment, is the proper analysis to be applied in determining whether a defendant is in "custody" and entitled to sentencing credit pursuant to Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760.[1]

In *Chiappini*, a plurality of this Court expressly concluded, as a matter of statutory interpretation, that a defendant who has participated in home confinement with electronic monitoring has spent time in "custody" for purposes of sentencing

---

monitoring. The legal predicate for the remand is properly at issue here, and we have held that that predicate was erroneous.

1. Section 9760 provides, in pertinent part:

Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in *custody* as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in *custody* prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added).

credit pursuant to Section 9760. As the lead Opinion in *Chiappini* explained, the decisions of this Court in *Commonwealth v. Kriston,* 527 Pa. 90, 588 A.2d 898 (1991), and *Commonwealth v. Conahan,* 527 Pa. 199, 589 A.2d 1107 (1991), concerned only the statutory interpretation of the term "imprisonment" for purposes of sentencing credit pursuant to Section 3731 of the Motor Vehicle Code, 75 Pa.C.S. § 3731.[2] However, here, as in *Chiappini,* we are presented with the statutory meaning of the term "custody" as used in Section 9760. As the lead Opinion in *Chiappini* stressed, the term "custody," while encompassing "imprisonment," is much broader and should not be limited to time spent in prison or a similar institutional setting. In drafting Section 9760, the legislature opted for the broader term "custody," instead of the more restrictive term "imprisonment." Thus, because the words "custody" and "imprisonment" are not identical, this Court should not simply ignore the divergent terms used in Sections 9760 and 3731, as the Majority is attempting to do here, and as the Superior Court did in *Commonwealth v. Shartle,* 438 Pa.Super. 403, 652 A.2d 874, 877 (1995), *petition for allowance of appeal denied,* 541 Pa. 637, 663 A.2d 690 (1995).

Nevertheless, as the lead Opinion in *Chiappini* noted, not every home confinement program with electronic monitoring will fall within the meaning of the term "custody" as used in Section 9760 of the Sentencing Code. Therefore, in order to determine whether a defendant has spent time in "custody" for purposes of sentencing credit pursuant to Section 9760, it is necessary to examine the extent of control exercised by those in authority managing and administering the home confinement program. As we explained in *Chiappini,* this determination should be made on a case-by-case basis after a

---

**2.** Section 3731 of the Drunk Driving Act, which has since been repealed by Act of 2003, Sept. 30, P.L. 120, No. 24, § 14, effective Feb. 1, 2004, and recodified at 75 Pa.C.S. § 3802, provided, in relevant part:

(1) Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree and the sentencing court shall order the person to pay a fine of not less than $300 and serve a minimum term of *imprisonment* of ... [.]

75 Pa.C.S. § 3731(e) (emphasis added).

full and complete review of the individual home confinement program. Otherwise, pursuant to the bright-line rule approach that the Majority adopts today, a defendant will be forever foreclosed from receiving credit for time served under even the most restrictive and limiting home confinement program.

Because of the varying home confinement programs in place throughout the counties of the Commonwealth, the necessity of a case-by-case approach as delineated in *Chiappini*, which carefully examines the particulars and nuances of each electronic monitoring program, is readily apparent. In *Chiappini*, a plurality of this Court determined that the technology employed by the Lackawanna County Home Confinement/Electronic Monitoring Program had sufficiently restrained and limited Chiappini's freedom so as to constitute "custody" pursuant to Section 9760. Specifically, participants in the Lackawanna County program were closely monitored by Lackawanna County prison authorities throughout the course of the day via a non-detachable ankle or wrist bracelet, which each participant was required to wear at all times. Moreover, an additional monitoring device was attached to each participant's home telephone. Lackawanna County prison authorities also ensured strict compliance with the restrictions of the program through random telephone calls and occasional visits from detention personnel. In addition, the program permitted county detention staff members, whether corrections or maintenance personnel, to enter a participant's residence upon request at any time. Essentially, a participant in the Lackawanna County home confinement program was an inmate of the county prison system and his or her residence was "considered a jail without bars." *Chiappini*, 782 A.2d at 497.

However, unlike *Chiappini*, in the matter *sub judice*, it is unclear whether the extent of control exercised by the Lycoming County Intensive Supervised Bail Program Utilizing Electronic Monitoring would entail "custody" pursuant to Section 9760. The evidentiary record detailing the Lycoming County home confinement program is insufficient to conclude that

Appellee's residence was, ultimately, a "jail without bars." Hence, the Superior Court did not specifically hold that Appellee was entitled to credit for time served in this particular home confinement program. Instead, the court remanded the matter for an evidentiary hearing to investigate the nature and extent of control exercised by the Lycoming County authorities in administering and enforcing its home confinement program.

Absent a full and complete evidentiary record detailing the particulars of the Lycoming County home confinement program, I believe that such a remand is necessary before categorically deciding that Appellee was not in "custody" and not entitled to sentencing credit. Accordingly, pursuant to the case-by-case approach outlined in *Chiappini*, I would affirm the Order of the Superior Court remanding this matter for an evidentiary hearing to scrutinize the nature and enforcement protocol of the Lycoming County home confinement program before reaching a final determination.