**Ryan R. JOHNSON, Petitioner**

v.

**Lawrence F. MURRAY, Board Secretary, PBPP, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 14, 2005.

Decided Dec. 8, 2005.

Ryan R. Johnson, petitioner, pro se.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondents.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Ryan R. Johnson petitions for review *pro se* from a final determination of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief. We affirm.

On December 15, 1995, Johnson was sentenced to six concurrent four to eight-year prison sentences based upon his guilty pleas in the Court of Common Pleas of Chester County to a number of drug charges. With an effective date of June 19, 1995, the sentence had a minimum expiration date of June 19, 1999 and a maximum expiration date of June 19, 2003. Upon the expiration of his minimum term, Johnson was released on parole on June 20, 1999.

On March 30, 2001, Johnson was declared delinquent by the Board effective March 26, 2001. Johnson was subsequently apprehended and, by decision mailed July 10, 2001, the Board recommitted Johnson as a technical parole violator to serve twelve months backtime, and as a convicted parole violator to serve a concurrent six months backtime. By decision mailed September 24, 2001, the Board recalculated the maximum expiration date of Johnson's sentence to be June 20, 2005. On August 19, 2002, Johnson was again released on parole.

On October 9, 2002, Johnson was declared delinquent by the Board effective October 3, 2002. On October 11, 2002, Johnson was arrested by the Philadelphia Police. By decision mailed January 17, 2003, the Board recommitted Johnson as a technical parole violator to serve twelve months backtime. By decision mailed September 22, 2003, the Board recalculated the maximum expiration date of Johnson's sentence to be June 28, 2005. On February 2, 2004, Johnson was again released on parole.

On April 21, 2004, Johnson was involved in a one-vehicle automobile accident while driving with his ten-year-old son, and he was arrested by the Pennsylvania State Police. Johnson was subsequently charged with two counts of Driving Under the Influence of Alcohol (DUI), and one count each of Recklessly Endangering the Welfare of a Child, Recklessly Endangering Another Person (REAP), Accidents Involving Death or Personal Injury While Not Properly Licensed, Driving While Operating Privilege is Suspended or Revoked, Careless Driving, Reckless Driving and Driving on Roadways Laned for Traf-

fic. Johnson did not post bail on the new charges.

On April 23, 2004, the Board issued a Warrant to Commit and Detain Johnson for the purported violation of his parole. On April 29, 2004, the Board issued a Notice of Charges and Hearings which alleged that Johnson violated his parole based upon the new criminal charges and a number of technical violations. On May 3, 2004, Johnson waived his right to a preliminary hearing and a panel hearing on the parole violations, and requested that the hearing be continued pending the disposition of the new criminal charges.

On March 7, 2005, Johnson pleaded guilty to one count each of DUI and REAP in the Court of Common Pleas of Chester County (trial court). The trial court sentenced Johnson to a forty-day to six-month term of imprisonment for his DUI conviction, and a consecutive one-year term of probation for his REAP conviction, giving him credit for the pre-trial time that he served in custody from April 21, 2004 to May 30, 2004. In addition, that same day, the trial court issued an order retroactively granting Johnson parole from this sentence effective May 30, 2004.

On March 21, 2005, a parole violation hearing was conducted before the Board's hearing examiner. By decision mailed April 22, 2005, the Board recommitted Johnson as a technical parole violator to serve twelve months backtime, and as a convicted parole violator to serve a concurrent twelve months backtime. The deci-

sion also stated that Johnson's parole violation maximum date was May 9, 2005. However, by decision mailed April 26, 2005, the Board modified its prior decision by correcting Johnson's parole violation maximum date to May 9, 2006.[1]

On May 10, 2005 and May 24, 2005, Johnson filed the instant requests for administrative relief in which he sought more credit from the Board for time that he had previously served. Specifically, Johnson sought credit from May 30, 2004 to October 21, 2004, the time for which he was retroactively paroled by the trial court on his new DUI conviction to the expiration of the maximum sentence imposed for that offense, which was also used by the Board as the date that he was in its custody for return. In the requests, Johnson also sought credit from either September 6 or 9, 2000 to March 20, 2001, the time during which he was required to participate in a home monitoring program as one of the conditions of his prior release on parole.

By decision mailed June 1, 2005, the Board denied Johnson's requests for administrative relief. On June 29, 2005, Johnson filed the instant *pro se* petition for review.[2]

The sole claim raised by Johnson in this appeal is that the Board erred in granting him the proper credit on his original sentence. More specifically, Johnson contends that the Board erred in failing to give him credit for the four months and twenty days, from May 30, 2004 to October 21, 2004, the time from which he was

---

1. On April 19, 2005, the Board issued a Form PBPP–39 which calculated the new maximum date to be May 9, 2006. In arriving at this date, the Board used October 21, 2004 as the date that Johnson was in its custody for return, as this was the six-month period from his arrest on April 21, 2004 to the expiration of the forty-day to six-month sentence imposed by the trial court for his new DUI conviction.

2. Our scope of review is limited to determining whether the Board committed a constitutional violation, or an error of law, and whether its findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Shaffer v. Pennsylvania Board of Probation and Parole*, 675 A.2d 784 (Pa.Cmwlth.1996).

retroactively paroled from his new DUI sentence to the time that the Board determined that he was in its custody for return to serve the remainder of his original sentence. Johnson also contends that the Board erred in failing to give him credit for the six months and eleven or fourteen days, from September 6 or 9, 2000 to March 20, 2001, during which time he was required to participate in a home monitoring program as one of the conditions of his prior release on parole.

■ Johnson first claims that the Board erred in failing to give him credit for the four months and twenty days, from May 30, 2004 to October 21, 2004, the time from which he was retroactively paroled from his new DUI sentence to the time that the Board determined that he was in its custody for return to serve the remainder of his original sentence. Specifically, he asserts that, pursuant to *Martin v. Pennsylvania Board of Probation and Parole*, 576 Pa. 588, 840 A.2d 299 (2003), he is entitled to credit for this period of time on his original sentence. We disagree because: 1) the order of the trial court retroactively paroling Johnson from service of his DUI sentence is a nullity; and 2) *Martin* does not apply to the facts of this case.

It is clear that the trial court's March 7, 2005 order paroling Johnson from his DUI sentence effective May 30, 2004 was a nullity as a matter of law, to the extent it attempted to parole him on a date prior to the date of sentencing on his new conviction. As we explained in *Patrick v. Pennsylvania Board of Probation and Parole*, 110 Pa.Cmwlth. 121, 532 A.2d 487 (1987), another case where a court of common pleas attempted to parole an individual on a date prior to the date he was sentenced on the new charges:

> [H]ere, Patrick was given credit by the common pleas court for his pretrial confinement time on his new sentence as he did not post bail on the new offenses. After his guilty plea, he was held in custody on the new charges, and hence unavailable to the Board to serve the parole violation backtime it imposed, until the common pleas court imposed sentence on March 14, 1986. It is on that date, and only upon that date, that the only warrant holding Patrick in confinement was the Board's parole violation warrant. It is only upon that date that he actually became available to the Board to serve the parole violation backtime the Board had previously imposed. Prior to that date, he was still held in custody by virtue of the new charges, to which he had already pleaded guilty, as well as the Board's warrant. By ordering that its grant of parole be made retroactive to October 15, 1985, the common pleas court here attempts to change history and would have this Court and the Board engage in the fiction that, but for the Board's warrant, Patrick could have walked out of prison on October 15, 1985[, prior to being sentenced on the new charges]. This fiction is absurd since all parties acknowledge that Patrick was not free to leave confinement on the new charges until sentence was imposed by the court on March 14, 1986, and parole on that sentence was granted. The common pleas court cannot use its paroling power under [Section 1 of the Act of June 19, 1911, P.L. 1059, *as amended,*] 61 P.S. § 314 [3] to change the

---

3. Section 1 provides, in pertinent part:
   The courts ... the several judicial districts of the Commonwealth ... are authorized, after due hearing, to release on parole any convict confined in the county jail ... of their respective district. No convict shall be paroled, under the provisions of this act, except upon petition verified by the oath of the person convicted or by some one in his or her behalf, and presented and filed in the

uncontested and undisputed fact that up until March 14, 1986, Patrick was held in custody on *both* the new conviction and the Board's warrant. Parole violation backtime and subsequent sentences must be served in consecutive order and a common pleas court cannot use its paroling power under 61 P.S. § 314 *to indirectly do what it is prohibited from doing directly, that is make all or part of its sentence run concurrently with parole violation backtime imposed by the Board.*

*Patrick,* 532 A.2d at 491–492 (emphasis in original). Thus, as a matter of law, on March 7, 2005 the trial court was patently without the authority to retroactively parole Johnson effective May 30, 2004 and its order to that end is a nullity.[4]

In addition, Johnson's reliance on *Martin* is misplaced. In *Martin,* the parolee was sentenced to forty-eight hours incarceration and one-year probation. He was arrested on May 30, 2000, at which time the Board lodged its detainer, but he was not sentenced until July 19, 2001. He remained incarcerated that entire time since he could not make bail solely because of his indigent status. The Board denied him credit for the time he was in-

---

court in which such person was convicted. Upon the presentation of any such petition, the court shall fix a day for hearing. . . . After such hearing, the court shall make such order as to it may seem just and proper. In case the court shall parole such convict, it shall place him or her in charge of and under the supervision of a designated probation officer. Any of said courts shall have *power to recommit to jail* . . . on cause shown by such probation officer that such convict has violated his or her parole, and to reparole in the same manner and by the same procedure as in the case of the original parole if, in the judgment of said court, there is a reasonable probability that the convict will be benefited by again according liberty to such convict, and also to again recommit for violation of such parole. This power of parole shall extend for a period not to exceed the maximum sentence provided by law for the offense of which the convict was convicted, regardless of the sentence first imposed upon the prisoner. . . .

4. *See also Bailey v. Pennsylvania Board of Probation and Parole,* 140 Pa.Cmwlth. 108, 591 A.2d 778, 781 (1991) ("[H]owever, we believe that the action of the sentencing judge in this case is equally violative of the basic principle enunciated in *Fleegle* [*v. Pennsylvania Board of Probation and Parole,* 110 Pa. Cmwlth. 227, 532 A.2d 898 (1987), *petition for allowance of appeal denied,* 518 Pa. 614, 540 A.2d 535 (1988)] and *Patrick* that a common pleas court, through the use of retroactive parole, may not do indirectly what it is powerless to do directly; namely, make a portion of Petitioner's Board imposed backtime run concurrently with a newly imposed county sentence. While that may not have been the intent of the sentencing judge in setting a retroactive parole date for Petitioner, the practical result would, nevertheless, be the same as if that had been the sentencing court's intent. We conclude that the Board acted properly in not recomputing Petitioner's backtime based on the orders of the sentencing court setting retroactive parole dates for Petitioner.") (footnote omitted); *Commonwealth v. Romolini,* 384 Pa.Super. 117, 557 A.2d 1073, 1077 (1989) ("[T]he next argument relating to the appealability of the lower court order is that since the decision to grant parole is committed to the discretion of the Common Pleas judge, it is not a pure question of law and not appealable. We agree that the grant or denial of parole is a discretionary act. *Commonwealth v. Fair,* [345 Pa.Super 61, 497 A.2d 643 (1985)]. However, the exercise of discretion by the Courts of Common Pleas is subject to appellate review under an abuse of discretion standard. Common Pleas courts are not unfettered from appellate scrutiny in the application of their discretion. While the granting of parole is a matter of discretion, a legal error may be committed in the course of arriving at the decision. For instance, it is beyond the power of the Common Pleas Court to order that parole become effective on a date prior to the date sentence is actually imposed. [*Patrick* ]; [*Fleegle* ]. If the lower court were to reach such a conclusion, this court would have the jurisdiction and authority to reverse on appeal.").

carcerated against his original sentence. This Court affirmed and the Supreme Court reversed. It explained that in such a situation, if the time spent incarcerated while awaiting sentencing is not credited to the original sentence, either because no confinement time at all is imposed or the time imposed is in excess of the maximum date on the new sentence, an indigent parolee is punished based solely on his indigent status. It held that such a result violated principles of equity, which are relevant to the award of credit. The Supreme Court's primary concern was that a convicted parole violator would not have his pre-sentence detention time applied to any sentence at all, purely because of his indigency.

Indeed as the Supreme Court noted:

> The reason often given for the failure to apply credit for time served within circumstances similar to the instant matter, is that the Constitution neither permits nor requires the establishment of "penal checking accounts". The concern is that prisoners, while not in confinement, could set up some sort of escrow into which they would deposit time spent awaiting trial on both a board warrant and pending charges, or that time served on unrelated charges later declared invalid could be deposited into that account to be subsequently withdrawn and applied toward a future sentence. As one court aptly noted, to allow an individual to accumulate time credits might mean that the situation could arise wherein an individual might have "banked" several years of prison time to apply to a sentence for a crime that he has not yet committed or for which he has not yet been prosecuted. *United States ex rel. Smith v. Rundle*, 285 F.Supp. 965 (E.D.Pa.1968). Our decision in the instant matter does not create a "penal checking account". It

merely provides for the allocation of all periods of confinement: (1) where confinement is the result of both a Board warrant and pending criminal charges; (2) where there is no period of incarceration imposed; (3) where the charges are nolle prossed; (4) or the parolee is acquitted. Accordingly, we hold that, where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence. We further hold that the indigency of a detainee in failing to satisfy the requirements for bail is not determinative as to whether the offender receives credit for time served.

*Martin*, 576 Pa. at 605–606, 840 A.2d at 308–309 (footnote omitted).

As noted above, in the instant case, Johnson was arrested by the Pennsylvania State Police on April 21, 2004, and was confined as a result of his new charges and the Board's detainer until his sentencing in the trial court on March 7, 2005. On that date, the trial court sentenced Johnson on his new conviction to a forty-day to six-month period of incarceration, effective from the date of his arrest on April 21, 2004. Thus, in starting the service of Johnson's original sentence on October 21, 2004, the Board merely started the service of his original sentence following the period of incarceration imposed by the trial court on his new charges. Therefore, because the trial court sentenced Johnson to a period of incarceration on his new charges, and because all of the time spent by him in confinement from the date of arrest on his new charges was credited to either his new sentence or to his original sentence, the *Martin* doctrine is not applicable and his reliance thereon is mis-

placed.[5] In short, Johnson's allegation of error in this regard is without merit.

■ Finally, Johnson claims that the Board also erred in failing to give him credit for the six months and eleven or fourteen days, from September 6 or 9, 2000 to March 20, 2001, during which time he was required to participate in a home monitoring program as one of the conditions of his prior release on parole. However, as stated by the Pennsylvania Supreme Court in *Commonwealth v. Kyle*, 582 Pa. 624, 638, 874 A.2d 12, 20 (2005), "[t]oday, we make clear that time spent on bail release, subject to electronic monitoring, does not qualify as custody for purposes of Section 9760 [of the Sentencing Code, 42 Pa.C.S. § 9760,] credit against incarceration." Moreover, the Pennsylvania Supreme Court has relied upon its holding in *Kyle* to reverse a recent opinion of this Court remanding a case for a hearing on whether time spent on electronic monitoring should be credited against a parolee's sentence. *See Booth v. Pennsylvania Board of Probation and Parole*, 866 A.2d 1189 (Pa.Cmwlth.), *reversed*, 583 Pa. 429, 879 A.2d 156 (2005). In short, under *Kyle*, Johnson is not entitled to credit for the six months and eleven or fourteen days during which time he was required to participate in a home monitoring program, and his claim to the contrary is without merit.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 8th day of December, 2005, the decision of the Pennsylvania Board of Probation and Parole, mailed

---

5. *See, e.g., Commonwealth v. Clark*, 885 A.2d 1030, 1032 (Pa.Super. (footnote omitted), wherein the Superior Court noted the following, in pertinent part:

¶ 7 Nor do we agree with Appellant that recent decisions applying sentencing credits in the parole revocation context control his case. In [*Martin*], the Pennsylvania Supreme Court acknowledged at the outset that Section 9760 did not specifically contemplate the parole violation and revocation context. Nevertheless, the Court construed our credit statutes in light of equitable principles that an indigent serve no more and no less time in confinement than similarly situated offenders of means, and that an offender "receive credit for all incarceration served before sentencing for which he is being detained in custody." *Id.* at 598, 840 A.2d at 304.

¶ 8 The Court then identified various parole revocation sentencing combinations and permutations that had, to that point, created uncertainty about how to credit pretrial detention time. One such combination was where the parolee was convicted on the new charge but received a corresponding sentence involving no new period of incarceration (e.g. probation only). In that instance, the Court held, it would be improper to withhold pretrial detention credit altogether simply because no new incarceration was imposed, and "the pre-trial custody time must be applied to the parolee's original sentence." *Id.* at 599, 840 A.2d at 305.

¶ 9 Critical to the holding, however, was the fact that the parole violator was serving a pretrial detention pursuant to both a detainer for the parole violation and the pending new criminal charges. Sentencing equities were held to mandate that if the new charges resulted in no incarceration, then the other source of the pretrial detention at issue, the original sentence, be credited with time served. "Accordingly, [the Pennsylvania Supreme Court held] that, where an offender is incarcerated on *both* a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." *Id.* at 605, 840 A.2d at 309 (emphasis added). *See also Commonwealth v. Smith*, 853 A.2d 1020 (Pa.Super.2004) (holding that defendant entitled to credit pretrial, probation detainer incarceration time against sentence on new charges because pretrial incarceration was partly attributable to the new charges).

June 1, 2005 at Parole No. 176–AF, is AFFIRMED.