J-S33026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JEREMY JAMES BROODY | : | |
| | : | |
| Appellant | : | No. 1921 MDA 2016 |

Appeal from the Judgment of Sentence July 20, 2016
In the Court of Common Pleas of Wyoming County
Criminal Division at No(s):  CP-66-CR-0000160-2013,
CP-66-CR-0000192-2013, CP-66-CR-0000192-2014

BEFORE:   BENDER, P.J.E., OTT, J. and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 17, 2017**

Jeremy James Broody appeals from the judgment of sentence imposed on July 20, 2016, in the Wyoming County Court of Common Pleas.  The trial court sentenced Broody to an aggregate term of 48 to 108 months' imprisonment on three separate drug cases, following his expulsion from the state intermediate punishment ("SIP") program.  On appeal, Broody contends the trial court failed to give him full credit for time-served, and challenges the discretionary aspects of his sentence.  Because we conclude Broody was entitled to additional credit for time served, we reverse and remand for further proceedings.  In all other respects, we affirm the judgment of sentence.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Broody's convictions stem from his involvement in the sale of narcotics, purportedly to support his own drug addiction. On July 11, 2014, Broody entered a guilty plea in the following cases: (1) at Docket No. 2013-CR-160, one count of criminal conspiracy; (2) at Docket No. 2013-CR-192, one count of possession with intent to deliver controlled substances; and (3) at Docket No. 2014-CR-192, one count of criminal conspiracy.[1] He was sentenced on February 19, 2015, to three, concurrent terms of 24 months in the SIP program.

At the time of sentencing, Broody was incarcerated at the Camp Hill Correctional Facility, where he remained until March 3, 2015. He was then transferred to Camp Quehanna State Correctional Facility. Broody was housed at Camp Quehanna for 124 days. Thereafter, he was transferred to a rehabilitation center in Reading, where he remained for an additional 63 days. On September 6, 2015, Broody was transferred to a community correctional center in Warnersville, where he was permitted to leave for eight hours per day of leisure time. However, after providing a urine screen that tested positive for controlled substances, Broody was re-incarcerated at the State Correctional Institution-Mahoney on October 27, 2015. On January 4, 2016, Broody was once again transferred to a community correctional center in Pottsville. He remained there until June 14, 2016,

_____

[1] **See** 18 Pa.C.S. § 903, and 35 P.S. § 780-113(a)(30).

when he tested positive for controlled substances. On June 29, 2016, Broody was expelled from the SIP program. *See* Trial Court Opinion, 1/18/2017, at 2.

On July 20, 2016, Broody was resentenced to an aggregate term of 48 to 109 months' imprisonment. On each docket, the court imposed a term of 16 to 36 months' imprisonment, to run consecutively to each other. The court also gave Broody credit for 343 days' time-served, but noted he might be entitled to more credit for a period of time he was incarcerated prior to his plea. *See* N.T., 7/20/2016, at 11. The court stated it would adjust the sentencing order if the probation office determined Broody was entitled to additional credit. *Id.* Further, the court found Broody was eligible for an aggregate RRRI[2] minimum of 40 months. *Id.* at 20.

Broody filed a timely motion for post-sentence relief, seeking additional credit for time-served, and arguing the aggregate sentence imposed was excessive. On August 23, 2016, the court conducted a hearing, and noted that it had confirmed Broody was entitled to an additional credit of 224 days, for a total credit of 567 days' time-served. N.T., 8/23/2016, at 8. Nevertheless, Broody argued he was also entitled to credit for the following time periods: (1) 124 days served at Camp Quehanna; (b) 63 days served at the Rehabilitation Center in Reading; and

---

[2] Recidivism Risk Reduction Incentive, 61 Pa.C.S. § 4501, *et seq*.

(c) 212 days served at the community correctional centers. ***See id.*** at 15-17. On October 25, 2016, the trial court entered an order denying Broody's post-sentence motion. This timely appeal follows.[3]

In his first issue, Broody contends the trial court failed to provide him full credit for time-served. "A claim based upon the failure to give credit for time served is a challenge implicating the legality of one's sentence." ***Commonwealth v. Dixon***, ___ A.3d ___, 2017 PA Super 129 (May 1, 2017) (quotation omitted). Accordingly, our standard of review is whether the trial court "erred as a matter of law and … our scope of review is plenary." ***Commonwealth v. Martz***, 42 A.3d 1142, 1145 (Pa. Super. 2012) (quotation omitted), *appeal denied*, 57 A.3d 69 (Pa. 2012).

At the time of sentencing, a defendant is entitled to credit "for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed[.]" 42 Pa.C.S. § 9760(1). In ***Commonwealth v. Fowler***, 930 A.2d 586 (Pa. Super. 2007), *appeal denied*, 944 A.2d 756 (Pa. 2008), this Court explained:

> The easiest application of [Section 9760] is when an individual is held in prison pending trial, or pending appeal, and faces a sentence of incarceration: in such a case, credit clearly would be awarded. However, the statute provides little explicit guidance in resolving the issue before us now, where [the defendant]

---

[3] On November 29, 2016, the trial court ordered Broody to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Broody complied with the court's directive and filed a concise statement on December 8, 2016.

spent time [somewhere other] than in prison. This difficulty results in part from the fact that neither Section 9760, nor any other provision of the Sentencing Code, defines the phrase "time spent in custody." The difficulty is also a function of the fact that there are many forms of sentence, and many forms of pre-sentencing release, which involve restrictions far short of incarceration in a prison.

* * *

The plain and ordinary meaning of imprisonment is confinement in a correctional or similar rehabilitative institution[.] "Courts have interpreted the word 'custody,' as used in Section 9760, to mean time spent in an institutional setting such as, at a minimum, an inpatient alcohol treatment facility."

*Id.* at 595-596 (quotations omitted).

In considering other forms of "custody," this Court has found, generally, a defendant is entitled to credit for time-served in a court-ordered inpatient rehabilitation program. *See Commonwealth v. Toland*, 995 A.2d 1242 (Pa. Super. 2010), *appeal denied*, 29 A.3d 797 (Pa. 2011). However, when a defendant voluntarily admits himself to an inpatient rehabilitation center, the decision whether to credit him for time-served is within the discretion of the trial court. *Id. See Commonwealth v. Conahan*, 589 A.2d 1107 (Pa. 1991) (finding trial court did not abuse its discretion in giving defendant credit for time-served in an inpatient, institutional rehabilitation center). Moreover, in *Commonwealth v. Tout-Puissant*, 823 A.2d 186 (Pa. Super. 2003), a panel of this Court determined that the defendant was entitled to credit against his intermediate punishment ("IP") sentence for

two weeks of time served in an "Outmate Program," in which the defendant completed community service projects while under 24-hour supervision.[4]

Nevertheless, the courts of this Commonwealth have made clear that a defendant restricted under electronic monitoring is not "in custody" for purposes of time-served credit. Indeed, in *Commonwealth v. Kyle*, 874 A.2d 12 (Pa. 2005), the Supreme Court held "time spent on bail release, subject to electronic monitoring, does not qualify as custody for purposes of Section 9760 credit against a sentence of incarceration." *Id.* at 20. Later, a panel of this Court, in *Commonwealth v. Maxwell*, 932 A.2d 941 (Pa. Super. 2007), *appeal denied*, 940 A.2d 363 (Pa. 2007), extended the *Kyle* decision to preclude credit for electronic monitoring imposed as part of an IP sentence.

In that case, the defendant completed the IP part of his sentence, and began a consecutive period of probation. *See Maxwell*, *supra*, 932 A.2d at 942. During resentencing following a violation of his probation, the defendant was not given credit for time-served on electronic monitoring during the IP portion of his sentence. *See id.* On appeal, the defendant argued *Kyle* was distinguishable because "his period of electronic monitoring was part of his sentence … not a conditional release on bail or parole." *Id.*

_____

[4] We note that the document explaining the "Outmate Program" specifically referred to the program as "incarceration." *Tout-Puissant*, *supra*, 823 A.2d at 189.

at 943. Since the defendant had successfully completed that part of his sentence, he argued he should receive credit for time-served. ***See id.***

The panel, however, disagreed, finding no difference whether "this alternative to incarceration" is employed pre-trial or as part of a sentence. ***Id.*** at 947. The panel opined:

> In [the defendant's] case, rather than incarceration, the trial court attempted to permit [the defendant] to be at home with electronic monitoring while he continued his mental health treatments and counseling. The fact that [the defendant] completed this term of his sentence, but later had the probationary term of his sentence revoked, does not transform this prior period as "time spent in custody."

***Id.***

In the present case, Broody seeks time-served credit for three distinct periods: (1) 124 days at Camp Quehanna; (2) 63 days at the rehabilitation center in Reading; and (3) 212 days in the community correctional centers. ***See*** Broody's Brief at 6. He contends Camp Quehanna is a "secure state correctional facility" where "the inmates are locked down except for when they are in the yard." Broody's Brief at 7. Similarly, he maintains the rehabilitation center in Reading was "locked down for twenty-four (24) hours a day" and he was not permitted to leave. ***Id.*** Although he acknowledged he was allowed to leave the community correctional centers "for work and leisure time," he explains he had to return within eight hours. ***Id.*** at 8. Therefore, Broody contends the trial court erred in failing to give him credit for time-served in these facilities.

In denying Broody's post-sentence motion, the trial court simply stated:

> In the instant matter, [Broody] agreed to participate in the SIP program. Some of the time [Broody] served was in facilities where [he] had "leisure time" to leave up to eight (8) hours per day. [Broody's] time in these facilities did not consist of an ultimate restriction on his liberty and therefore, this Court did not include that time in its determination of [credit for time] served.

Trial Court Opinion, 1/18/2017, at 5.

While all of Broody's time spent in these facilities was court-ordered, *i.e.*, part of his SIP sentence, we find no abuse of discretion on the part of the trial court in determining Broody is not entitled to credit for the 212 days he spent at the community correctional centers. Although he was required to report to the facility every night, he was permitted to leave, unaccompanied, for eight hours each day and could extend that time, with prior approval, for overtime work. *See* N.T., 8/23/2016, at 19. Accordingly, we find Broody's time spent at these facilities more akin to the time served on electronic monitoring in *Maxwell*, rather than the 24-hour supervised "Outmate Program" at issue in *Tout-Puissant*. Therefore, Broody is not entitled to credit for the 212 days he spent at the community correctional centers.

However, the trial court, in its opinion, did not specifically discuss the more restrictive environments Broody encountered at Camp Quehanna and the Reading rehabilitation facility. Broody testified Camp Quehanna is a "secure state prison," where "everybody wears [Department of Corrections]

- 8 -

... browns … and there's [] full guards[.] It's a lockdown facility." N.T., 8/23/2016, at 21. The Commonwealth did not dispute Broody's characterization. Rather, during the post-sentence motion hearing, the Commonwealth conceded that if Broody was, in fact, transferred to Camp Quehanna, he would be entitled to credit for his time there "since that is a state facility, a lockdown facility, a secure facility[.]"*Id.* at 12. Because there is no dispute that Broody was housed at Camp Quehanna for 124 days, we conclude the trial court erred in failing to give him time-served credit for that period.[5]

Similarly, Broody testified the "DOC rehab center" in Reading was a locked facility, where he received "inpatient intensive treatment." *Id.* at 20. He explained he was not permitted to leave the center, and was monitored by the Department of Corrections. *See id.* The Commonwealth did not provide any evidence or testimony contradicting Broody's claims.

Accordingly, we conclude the trial court erred in failing to give Broody credit for the 124 days he spent at Camp Quehanna, and the 63 days he spent at the Reading rehabilitation center. At both facilities, Broody was under constant supervision, and was not permitted to leave. Moreover,

---

[5] Although there appeared to be some confusion at the post-sentence hearing as to whether Broody was housed at Camp Quehanna, neither the trial court, nor the Commonwealth, contests that fact on appeal. Indeed, both list Broody's time at Camp Quehanna in their respective recitation of the facts. *See* Trial Court's Opinion, 1/18/2017, at 2; Commonwealth's Brief at 1.

because the time he served at these facilities was part of his SIP sentence, we find they are similar to a court-ordered inpatient rehabilitation program, for which he is entitled to time-served credit. **See Toland**, **supra**. Therefore, upon remand, we direct the trial court to modify Broody's sentence to include an additional 187 days' credit for time-served.

Next, Broody challenges the discretionary aspects of his sentence. Specifically, he argues:

> The trial court failed to consider [Broody's] crimes involved less than three (3) grams of heroin and his sales were to support an addiction. The trial court also failed to consider the amount of time [Broody] remained in the SIP program before being discharged. The sentences should have been run concurrently.

Broody's Brief at 9.

A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." **Commonwealth v. Best**, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Broody complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f).  Therefore, we must determine whether he has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Ventura**, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted).  "[A]n allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review." **Commonwealth v. Rhoades**, 8 A.3d 912, 918-919 (Pa. Super. 2010), *appeal denied*, 25 A.3d 328 (Pa. 2011), *cert. denied*, 132 S.Ct. 1746 (U.S. 2012).  However, an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. **Commonwealth v. Gonzalez**, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015), *quoting* **Commonwealth v. Dodge**, 77 A.3d 1263, 1272 (Pa. Super. 2013) (*en banc*), *appeal denied*, 91

A.3d 161 (Pa. 2014). Moreover, while a challenge to the imposition of consecutive versus concurrent sentences generally does not raise a substantial question, such a claim may be addressed when the defendant alleges the "aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Moury***, 992 A.2d 162, 171-172 (Pa. Super. 2010). Therefore, because we find Broody's claims nominally raise a substantial question, we proceed to an examination of his arguments on appeal.

Similar to the revocation of a probationary sentence, when a trial court revokes an SIP sentence, "the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9774(c). Here, the trial court imposed a sentence in the standard range of the Sentencing Guidelines on each conviction, but ran the terms consecutively to one another. The court explained Broody's "actions exhibit a pattern of drug trafficking and any lesser [] sentence would depreciate the serious nature of his offenses[.]" N.T., 7/20/2016, at 20.

Upon our review of the record, we find neither the individual sentences imposed, nor the court's reasons therefor, demonstrate an abuse of discretion. Broody fails to acknowledge he pled guilty to his participation in three separate crimes, with three separate offense dates (9/11/2012, 11/16/2012, and 2/23/2014) occurring over a period of 17 months.

Accordingly, the court's imposition of consecutive terms of imprisonment was reasonable.

Moreover, as noted above, upon revocation of an SIP sentence, "the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9774(c). The trial court initially gave Broody the opportunity to avoid incarceration and obtain treatment for his drug addiction when it sentenced him to the SIP program. However, he failed to complete the program. Broody has not demonstrated on appeal that the sentences imposed, either individually or in the aggregate, were an abuse of discretion. Accordingly, he is entitled to no relief on this claim.

Because we conclude the trial court erred when it failed to give Broody an additional 187 days' credit for time-served, we reverse and remand to the trial court. In all other respects, we affirm.

Judgment of sentence affirmed in part, and vacated in part. Case remanded for correction of credit for time-served. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2017

- 13 -