J-S22023-22
J-S22024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAHEEM WILLIS | : | |
| | : | |
| Appellant | : | No. 1621 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005238-2009

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAHEEM WILLIS | : | |
| | : | |
| Appellant | : | No. 2034 EDA 2021 |

Appeal from the PCRA Order Entered August 26, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005238-2009

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED JANUARY 9, 2023**

Following a jury trial in the Philadelphia County Court of Common Pleas in July of 2010, Shaheem Willis (Appellant) was convicted of attempted murder[1] and related charges for his role in the March 2009, shooting of thirteen-year-old J.S., and sentenced to an aggregate term of 20 to 40 years'

---

[1] 18 Pa.C.S. §§ 901, 2502(a).

imprisonment. He was later granted partial post-conviction collateral relief as to his sentence and resentenced to the same term on April 9, 2018. The *pro se* appeal at Docket No. 1621 EDA 2021 is from the judgement of sentence imposed upon resentencing. Appellant contends: (1) the trial court lacked authority to sentence him pursuant to 18 Pa.C.S. § 1102(c) (attempted murder causing serious bodily injury) and lacked subject matter jurisdiction over that offense; and (2) his sentence is illegal because the court did not consider his juvenile status in imposing a statutory maximum sentence and failed to comply with 18 Pa.C.S. § 1106 when ordering restitution.

The *pro se* appeal at Docket No. 2034 EDA 2021 is from the August 26, 2021, order entered in the Philadelphia County Court of Common Pleas dismissing Appellant's second petition filed pursuant to the Post Conviction Relief Act[2] (PCRA) as untimely. Appellant argues the petition was not untimely, but rather, prematurely filed before his April 2018 judgment of sentence was final. He nevertheless asserts the ineffective assistance of trial counsel for failing to protect him from an aggravated sentence.

For ease of disposition, we address these related appeals in a single memorandum. At Docket No. 1621 EDA 2021, for the reasons discussed below, we vacate, in part, the judgment of sentence imposed at Appellant's April 2018 resentencing, and remand for resentencing limited to the issue of restitution; in all other respects, we affirm. At Docket No. 2034 EDA 2021,

---

[2] 42 Pa.C.S. §§ 9541-9546.

we conclude the trial court had no jurisdiction to consider Appellant's premature PCRA petition, and, consequently, we quash the appeal.

## I.     FACTS & PROCEDURAL HISTORY

The relevant facts underlying Appellant's conviction were summarized by this Court in a prior appeal as follows:

> At 3:30 p.m. on February 25, 2009, [then 17-year-old] Appellant, Christian Williams, and Deshaoun Williams were standing near 6100 Spruce Street in Philadelphia.[1]  The victim in this case, thirteen-year-old J.S., arrived in a car driven by his mother, Tamika Anderson.  As they circled the block looking for a parking place, J.S. noticed that either Appellant or one of the Williams brothers was pointing at the car.  Once the car was parked, J.S. waited in the front passenger seat while his mother entered the school to pick up her daughter.
>
> ---
>
> [1] Appellant was tried with co-defendant Christian Williams (Williams).
>
> ---
>
> Soon after his mother exited, J.S. observed Appellant and the Williams brothers approaching in the rearview mirror.  A shot was fired, causing the passenger window to shatter, and striking J.S. in the chest.  Appellant then ran up to the car, firing a second shot at J.S. from only two feet away.  The second shot struck J.S. in the hand.[2]  Appellant and Williams fled.
>
> ---
>
> [2] Crime scene investigators ultimately recovered five 9-mm bullet casings at the scene of the shooting. They determined that all five casings had been ejected from the same gun.
>
> ---
>
> J.S. spent two and a half weeks in the hospital, after sustaining what the sentencing court described as "grave, life threatening injuries that required extensive surgery to all of his vital organs, including removal of part of his lung."  He had

- 3 -

multiple scars from the surgeries and bullet wounds. After being discharged from the hospital, J.S. then spent several months recovering from his injuries before he could resume some of his normal activities.

When given a photo array on March 3, 2009, J.S. identified Appellant as the shooter and Williams as one of his companions. Tamika Anderson also observed Appellant placing a gun in his pocket as he fled. She gave chase but lost Appellant in a crowd. A nearby bus driver, Jonathan McGill, heard the gunshots and then observed Appellant running from the scene of the crime. McGill called police and gave them a physical description of Appellant.

Acting pursuant to a warrant, police arrested Deshaoun Williams at his home, recovering from Deshaoun a cell phone that contained a photo of him brandishing two firearms. One of those firearms was the same type used to shoot J.S. The cell phone also had Appellant listed as one of Deshaoun's contacts, under Appellant's nickname in the neighborhood, "Shy". In a room shared by the Williams brothers, shown to police by Williams' mother, a live bullet was found that matched the bullet casings found at the crime scene.

*Commonwealth v. Willis*, 470 EDA 2011 (unpub. memo. at 1-3) (Pa. Super. Jun. 12, 2012), *appeal denied*, 331 EAL 2012 (Pa. Mar. 12, 2013), *cert. denied*, 571 U.S. 866 (Oct. 7, 2013).

Appellant was subsequently arrested and charged with attempted murder, aggravated assault, criminal conspiracy, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime (PIC).[3] His criminal information did not

---

[3] 18 Pa.C.S. §§ 2702(a), 903(a)(1), 6106(a)(1), 6108, and 907, respectively.

specify that the victim of Appellant's attempted murder suffered serious bodily injury.[4]

As noted above, Appellant proceeded to a joint jury trial with Christian Williams and was convicted of the above-stated charges. Furthermore, on the verdict sheet, the jury responded, "Yes" to the question of whether the victim suffered "serious bodily injury." **See** Verdict Report, 7/20/10.

On October 8, 2010, the trial court sentenced Appellant to an aggregate term of 20 to 40 years' imprisonment for attempted murder, followed by an aggregate 12 years' probation for the firearms offenses.[5] He was also ordered to pay $34,637.79 in restitution. Appellant's aggravated assault and conspiracy convictions merged for sentencing purposes, and the court imposed no further penalty for PIC.

Appellant filed a direct appeal challenging the discretionary aspects of his sentence, specifically, asserting the trial court did not "adequately consider

_____

[4] **See** 18 Pa.C.S. § 1102(c) (permitting a court to impose a sentence of up to 40 years; imprisonment when serious bodily injury results from an attempted murder; otherwise the maximum sentence permissible is 20 years' imprisonment).

[5] The trial court noted that it had ordered a presentence investigation report, mental health evaluation, and a drug and alcohol evaluation, which were completed prior to sentencing and provided to the parties. **See** N.T., 10/8/10, at 5.

that Appellant was only 17 years old at the time of the offense."[6]  ***Willis***, 470 EDA 2011 (unpub. memo. at 8).   This Court affirmed the judgment of sentence, and both the Pennsylvania Supreme Court and United States Supreme Court denied review.[7]

Appellant filed a timely PCRA petition, *pro se*, on March 10, 2014, in which he asserted numerous trial court errors, as well as the ineffective assistance of preliminary hearing, trial, and direct appeal counsel.   ***See*** Appellant's Petition for Post-Conviction Collateral Relief, 3/10/14, at 6(A)-6(D).  Although counsel was appointed, Appellant, acting *pro se*, filed both a supplemental and amended petition.  On September 15, 2014, Appellant filed a motion to remove counsel and proceed *pro se*.  Following a ***Grazier***[8] hearing on February 9, 2016, the court granted Appellant's request.

Appellant filed an amended *pro se* PCRA petition on April 28, 2016, followed by a supplemental petition on May 6.  In the supplemental petition, Appellant asserted for the first time that he was improperly sentenced to mandatory minimum terms pursuant to 42 Pa.C.S. §§ 9712 (offenses committed with firearms) and 9718 (offenses against infant persons), which

_____

[6] At the April 2018 resentencing hearing, the court noted that Appellant was "in fact, 17 years and ten months" at the time of the shooting.  N.T., 4/9/18, at 30.

[7] For purposes of PCRA review, Appellant's judgment of sentence was final on October 7, 2013, the date the United States Supreme Court denied Appellant's petition for writ of *certiorari*.  ***See*** 42 Pa.C.S. § 9545(b)(3).

[8] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

have been deemed unconstitutional pursuant to **Alleyne v. United States**, 570 U.S. 99, 116 (2013) (any fact that increases mandatory minimum sentence must be submitted to jury and found beyond reasonable doubt).

At some point thereafter, the trial court granted Appellant relief on his sentencing claim.[9]   On April 9, 2018, the court conducted a hearing to "resentence [Appellant] pursuant to" **Alleyne**.   **See** N.T., 4/9/18, at 11. Appellant continued to represent himself.   At the resentencing hearing, the trial court stated that it "wanted to make sure that it was absolutely clear [it] was not sentencing [Appellant] to a mandatory minimum sentence[.]" **Id.** After hearing argument from both the Commonwealth and Appellant, the court imposed the same sentence as it did at the original hearing — a standard range sentence of 20 to 40 years' imprisonment for attempted murder causing serious bodily injury, followed by an aggregate term of 12 years' probation for the firearms offenses. **See** N.T., 4/9/18, at 29-30.  The court also reimposed the restitution order in the amount of $34,637.79. **Id.** at 31.

Relevant to the claims before us, the trial court made the following comments regarding the sentence it imposed:

> [This] is a guideline range sentence.  It is appropriate under the circumstances given the Commonwealth incorporating by reference the testimony from the [October 8, 2010,] sentencing which included the testimony of the mother and impact on the

---

[9] There is no order in the certified record or notation on the docket indicating when the court granted this relief.

victim, and the original determination by the jury that they found serious bodily injury caused on the verdict sheet.

The Commonwealth's memo underlying the fact that the victim was shot in the chest injuring his heart, lung, kidneys and liver and was shot a second time on the left hand. His injuries were severe, numerous, and life altering. The sentence of 20 to 40 years accurately reflects the seriousness of the offense. It will promote respect for the law and provide just punishment for the offense.

[Appellant] argues that he should be treated like the juveniles who have been sentenced to life imprisonment and who are now having their sentences reviewed. [Appellant] was not sentenced on a homicide case, this was not a life sentence where [his] juvenile status would be taken into consideration. I have read [Appellant's] document called motion for court to take judicial notice of mitigating sentencing factors. [Appellant] was, in fact, 17 years and ten months. He was very close to being 18 years old and . . . this was a crime that [Appellant] deliberately participated in and was the person who shot the victim numerous times.

So I'm reimposing the same sentence of 20 to 40 years on the charge of attempted murder. . . .

N.T., 4/9/18, at 29-30.

On April 17, 2018, Appellant filed a timely *pro se* post-sentence motion, requesting reconsideration of his sentence on the following bases: (1) recent United States Supreme Court decisions regarding juvenile brain development confirm his sentence was manifestly excessive; (2) the court failed to properly consider mitigating factors and paid "lip service" to the "illegality of the mandatory minimums that were initially" imposed, as well as the fact that his co-defendant received a lenient sentence; (3) the court failed to provide adequate reasons on the record for the sentence imposed; (4) the court failed to consider his testimony that he was "extremely remorseful" and "had

matured and rehabilitated[;]" and (5) the court failed to order an updated presentence investigation report. *See* Appellant's Post Sentence Motion for Reconsideration of Sentence, 4/17/18, at 2-3 (unpaginated). The trial court did not promptly rule upon Appellant's post-sentence motion. Although the motion should have been denied by operation of law on August 15, 2018, there was no order entered on the docket or served on the parties. *See* Pa.R.Crim.P. 720(B)(3)(a), (c).

Meanwhile, on April 10, 2018, the trial court issued Appellant Pa.R.Crim.P. 907 notice of its intent to dismiss the remaining claims in his PCRA petition without conducting an evidentiary hearing. Appellant promptly filed an objection; however, on May 4, 2018, the court entered an order dismissing Appellant's petition as meritless. *See* Order, 5/4/18. Appellant timely appealed.

On November 15, 2019, a panel of this Court affirmed the order denying PCRA relief.[10] *See Commonwealth v. Willis*, 1555 EDA 2018 (unpub. memo. at 1) (Pa. Super. Nov. 15, 2019), *appeal denied*, 103 EAL 2020 (Pa. Aug. 18, 2020). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 18, 2020.

_____

[10] We note that Appellant's first claim challenged the discretionary aspects of his April 2018 resentencing. *See Willis*, 1555 EDA 2018 (unpub. memo. at 6). However, the panel concluded that issue was not before it because Appellant did not appeal from the new judgment of sentence; rather, the appeal was from the May 4, 2018 order denying his prior PCRA petition. *See id.* (unpub. memo. at 6-7).

On August 25, 2020, Appellant filed the present PCRA petition, *pro se*. He sought relief from his April 9, 2018, resentencing, and asserted the petition was timely filed. **See** Appellant's Petition for Post-Conviction Relief Pursuant to 42 Pa.C.S. § 9541, et. seq., 8/25/20 (2020 PCRA Petition), at 2. Appellant raised the following two claims: (1) his sentence was illegal because the Commonwealth failed to provide notice that it intended to prove the victim of his attempted murder suffered serious bodily, thus permitting the court to impose a lengthier sentence; and, relatedly, (2) trial counsel was ineffective for failing to object to a special interrogatory verdict sheet, which asked the jury to determine if the victim suffered serious bodily injury. **See id.** at 3.

The Commonwealth filed a motion to dismiss on May 12, 2021, asserting: (1) Appellant's claims regarding his April 2018 resentencing were premature because the clerk of courts never entered an order denying Appellant's post-sentence motion by operation of law; and (2) Appellant's challenge to trial counsel's ineffective assistance was time-barred. **See** Commonwealth's Motion to Dismiss Appellant's PCRA Petition, 5/12/21, at 7-8. In his *pro se* response, Appellant "agree[d] with the Commonwealth that his sentencing claim [was] prematurely filed because his post-sentence motion from his resentencing [had] yet to be formally disposed." Appellant's Response to Commonwealth's Motion to Dismiss, 5/24/21, at 2 (capitalization omitted). However, relying on the unpublished decision of this Court in **Commonwealth v. Fantauzzi**, 19 EDA 2018 (Pa. Super. May 22, 2019), *appeal denied*, 480 MAL 2019 (Pa. Feb. 3, 2020), Appellant insisted he could

raise counsel's ineffectiveness for failing to "protect [him] from the imposition of an illegal sentence."  Appellant's Response to Commonwealth's Motion to Dismiss at 3-4.

On July 27, 2021, the trial court entered an order denying Appellant's April 17, 2018, post-sentence motion by operation of law.  **See** Order, 7/27/21.  Appellant filed a timely notice of appeal on August 3, 2021,[11] and complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  The appeal from the April 9, 2018, judgment of sentence is docketed at 1621 EDA 2021.

Meanwhile, also on July 27, 2021, the court notified Appellant of its intent to dismiss his 2020 PCRA Petition without conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907.  **See** Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907, 7/27/21.  Appellant did not file a reply, and

---

[11] "If post-sentencing motions are timely filed, . . . the judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion, or the motion is denied by operation of law."  **Commonwealth v. Borrero**, 692 A.2d 158, 159 (Pa. Super. 1997).  Pursuant to Pa.R.Crim.P. 720, a trial court "shall decide [a timely filed] post-sentence motion . . . within 120 days of the filing of the motion[,]" otherwise the clerk of courts "shall forthwith enter an order" denying the motion by operation of law. Pa.R.Crim.P. 720(B)(3)(a), (c).  However, "where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003).  Thus, Appellant's notice of appeal, filed within 30 days of the date the trial court belatedly entered an order denying his post-sentence motion by operation of law, was timely filed.

on August 26, 2021, the court dismissed Appellant's 2020 PCRA Petition as untimely. Order, 8/26/21. Appellant filed a timely appeal,[12] which is docketed at 2034 EDA 2021.

## II. RESENTENCING APPEAL (DOCKET NO. 1621 EDA 2021)

At Docket No. 1621 EDA 2021, Appellant raises the following claims concerning his April 9, 2018, resentencing:

A. Did not the sentencing court lack statutory authorization to impose a 40 year sentence on Appellant for an attempted murder charge where the element of serious bodily injury in relation to attempted murder was not included in the information as required by 42 Pa.C.S. § 8931(e), and Pa.R.Crim.P. 560(B)(5) and 560(D), in violation of 1 Pa.C.S. § 1504?

B. Is not Appellant's sentence illegal because he was ambushed with the verdict sheet's special interrogatory about serious bodily injury in connection with attempted murder and Appellant had no *de jure* nor *de facto* notice to defend against attempted murder with serious bodily injury, and this surprise interrogatory was not enough to put Appellant on notice?

C. Did not the trial court lack jurisdiction over the subject matter of attempted murder with serious bodily injury, under the current law and the law at the time of trial where the Commonwealth failed to make the necessary formal accusation in Appellant's criminal information?

D. Did not the sentencing court illegally impose restitution when it failed to order the "method of restitution"; where the order for restitution is to those who do not statutorily qualify as a

---

[12] Although the notice of appeal was docketed on September 27, 2021, the 30th day after the entry of the court's order — September 25th — fell on a Saturday. Therefore, Appellant had until the following Monday, September 27th, to file a timely appeal. *See* 1 Pa.C.S. § 1908.

victim; and where the Commonwealth's recommendation was not based upon information received from the victim and committed a fraud upon the court?

E. Is not Appellant's sentence illegal where the sentencing court stated, on the record, that Appellant's juvenile status should not come into consideration because he was not facing a life sentence before imposing the harshest possible penalty for an attempted murder [charge], in violation of the United States' and Pennsylvania's cruel and unusual punishment clauses?

F. Is not Appellant's sentence illegal because the sentencing court failed to give credit for time served in "custody" and the applicable statute did not exclude, by any statutory definition, strict confinement to a home with electronic monitoring and probationary officers virtually present at all times, with law enforcement officers on standby from the statutory term "custody"?

Appellant's Brief (1621 EDA 2021) (Appellant's Resentencing Brief) at 4-6 (some capitalization omitted).[13]

## (A)(1)  REVIEW FOLLOWING RESENTENCING

Preliminarily, we note that Appellant has filed this appeal from the judgment of sentence imposed following his resentencing, which was the result of a successful PCRA claim challenging the possible unconstitutionality of his original sentence.  Because he has already had the benefit of a direct appeal following his conviction, his claims in this appeal are limited to those challenging the sentence imposed following remand.  *See Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa. Super. 2016); *Commonwealth v. Anderson*, 801 A.2d 1264, 1266 (Pa. Super. 2002) ("Having succeeded on

---

[13] We have reordered Appellant's claims for purposes of disposition.

[challenges to his sentence] and having been re-sentenced following remand, appellant could not file another direct appeal attacking his conviction: the only issues reviewable in a direct appeal would be challenges to the sentence imposed following remand.").

## (A)(2)  ATTEMPTED MURDER WITH SERIOUS BODILY INJURY

Appellant's first three claims, which we address together, challenge the trial court's authority to impose a maximum 40-year term of imprisonment for his conviction of attempted murder.

By way of background, Section 1102 of the Crimes Code governs sentencing for a conviction of, *inter alia*, murder and attempted murder.  ***See*** 18 Pa.C.S. § 1102.  Subsection (c) provides, in relevant part:

> (c) . . . Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt . . . to commit murder . . . **where serious bodily injury results** may be sentenced to a term of imprisonment which shall be fixed by the court at **not more than 40 years**.  Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c)(emphases added).  Therefore, as an *en banc* panel of this Court explained:

> Section 1102(c) imposes a condition precedent to the imposition of a maximum term of imprisonment of up to 40 years, specifically, that serious bodily injury must have resulted from the attempted murder.  Otherwise, the sentence shall be not more than 20 years.  Serious bodily injury is a fact that must be proven before a maximum sentence of [40] years may be imposed for attempted homicide.  Moreover, a defendant must be put on

- 14 -

notice when the Commonwealth is seeking a 40–year maximum sentence for attempted murder.

***Commonwealth v. Barnes***, 167 A.3d 110, 117 (Pa. Super. 2017) (en banc) (citations & quotation marks omitted).

Furthermore, pursuant to the dictates of ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." ***Id.*** at 490. Thus, we have held that in order to comport with ***Apprendi*** and its progeny, a trial court may not impose an aggravated sentence of more than 20 years' imprisonment for attempted murder unless the jury finds, beyond a reasonable doubt, that the victim suffered serious bodily injury as a result of the attempted murder. ***See Commonwealth v. Johnson***, 910 A.2d 60, 67 (Pa. Super. 2006); ***see also Barnes***, 167 A.3d at 118-19. With this background in mind, we consider Appellant's arguments on appeal.

Appellant first argues the trial court "lacked statutory authorization" to impose a 40-year maximum sentence when he was "not charged, via information" with the offense of attempted murder **with serious bodily injury**.[14] ***See*** Appellant's Resentencing Brief at 12-14. He emphasizes that under Pennsylvania Rules of Criminal Procedure 561(B), "any charge not listed

---

[14] Appellant's criminal information charged only that he committed "Criminal Attempt" by "attempting to cause the death of another human being." Information, 5/11/09, at 1.

on the information shall be deemed withdrawn by . . . the Commonwealth." *Id.* at 12-13, *citing* Pa.R.Crim.P. 561(B) (emphasis omitted).

Appellant further maintains that he was "ambushed" by the special interrogatory on the jury's verdict sheet which, he claims, "for the first time, [raised] a question about [serious bodily injury] in connection with attempted murder[.]" Appellant's Resentencing Brief at 19. He insists the facts of this case are "completely identical" to those in **Commonwealth v. Bickerstaff**, 204 A.3d 988, 997-98 (Pa. Super. 2019) (vacating 40-year maximum sentence for attempted murder and remanding for resentencing; finding trial counsel was ineffective for failing to object to special interrogatory asking jury to determine if victim sustained serious bodily injury when there was no notice of serious bodily injury claim prior to jury deliberations). Appellant's Resentencing Brief at 19-20. In a related claim, Appellant argues that because of the Commonwealth's failure to include the charge of attempted murder with serious bodily injury in his information, the trial court lacked subject matter jurisdiction, and he must be discharged. *Id.* at 30.

Preliminarily, we emphasize that, contrary to Appellant's argument, the trial court had the "statutory authority" to impose a sentence of up to 40 years' imprisonment pursuant to Section 1102(c) after **the jury** found the victim suffered serious bodily injury as a result of the attempted murder. **See** 18 Pa.C.S. § 1102(c). Nevertheless, Appellant's claims implicate the legality of his sentence — he, inarticulately, invokes a due process challenge by arguing he had no notice that the Commonwealth intended to prove the victim suffered

- 16 -

serious bodily injury as a result of the attempted murder. Thus, our "standard of review is de *novo* and the scope of review is plenary." **Commonwealth v. King**, 234 A.3d 549, 559-60 (Pa. 2020).

The Supreme Court's recent decision in **King**, **supra**, is instructive. In that case, as here, the defendant was charged with attempted murder, but the criminal information "made no reference" to the fact that the Commonwealth intended to prosecute him for attempted murder causing serious bodily injury pursuant to Section 1106(c). **King**, 234 A.3d at 552-53. However, the jury verdict sheet included an interrogatory question, which asked the jury to determine if the victim suffered serious bodily injury, in the event it found the defendant guilty of attempted murder. **Id.** at 553. The jury responded that the victim did suffer serious bodily injury, and the trial court later sentenced the defendant to an aggravated term of 20 to 40 years' imprisonment for his conviction of attempted murder. **Id.**

Both the trial court and a panel of this Court rejected the defendant's claim that his attempted murder sentence was illegal because he was not properly charged with attempted murder causing serious bodily injury. **See King**, 234 A.3d at 553-54. The Supreme Court granted allowance of appeal to consider, *inter alia*, whether a defendant's due process and Sixth Amendment rights are denied when the Commonwealth is not required to "provide formal notice to a defendant when seeking to prosecute him for an aggravated offense, specifically the 40-year maximum sentence authorized under 18 Pa.C.S.A. § 1102(c)?" **Id.** at 556.

The Supreme Court concluded that formal notice was required:

[W]hen the Commonwealth intends to seek an enhanced sentence for attempted murder resulting in serious bodily injury under Section 1102(c), the Commonwealth must include a citation to the statutory provision as well as its language in the charging documents.

*King*, 234 A.3d at 562. However, while the Court concluded that formal notice was lacking in that case, it, nevertheless, declined to find the defendant's sentence illegal because it concluded the error was harmless. *See id.* at 563, 566.

The *King* Court noted that the defendant relied on caselaw striking down mandatory minimum sentencing statutes in the wake of *Alleyne*, *supra*,[15] which rejected a harmless error analysis. *See King*, 234 A.3d at 565. However, the Supreme Court held those cases were inapplicable to the present facts. *Id.* Indeed, in the *Alleyne* cases, the mandatory minimum statutes were determined to be "facially unconstitutional" and incapable of severance, so that the Commonwealth could not cure the unconstitutionality of the statute absent legislative authority. *Id.* at 565-66. However, the *King* Court explained that, in the case before it, "a proper notice would permit the sentence" imposed by the trial court; thus, it concluded the "error [was] amenable to harmless error review." *Id.* at 566. The Court further found:

_____

[15] In *Alleyne*, the United States Supreme Court expanded *Apprendi* to apply to mandatory minimum sentences, and held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 570 U.S. at 103.

- 18 -

[T]he Commonwealth has met its burden of establishing that the error was harmless beyond a reasonable doubt. [T]he evidence of serious bodily injury in this case was overwhelming and uncontroverted. Moreover, this is not a case where the judge made the requisite finding, . . . but rather it was stipulated to and found by the jury beyond a reasonable doubt. [The defendant] never contested the severity of [the victim's] injuries, but rather stipulated that, as a result of two gunshot wounds, [the victim] suffered a shattered hipbone and anklebone, requiring multiple surgeries and high intensity inpatient occupational and physical therapy. While [the defendant] did not receive formal notice of the Commonwealth's intent to seek the enhancement, [he] received *de facto* notice, at various points before trial, that the Commonwealth was seeking the enhancement. For example, the factual summaries in the charging documents made clear that [the victim] suffered serious bodily injury. Moreover, the Commonwealth advised [the defendant] that the minimum penalty for attempted murder if convicted was seventeen and one-half years, signaling that the Commonwealth intended to seek the enhancement. Finally, the Commonwealth and [the defendant's] attorney reviewed and agreed to the content and form of the verdict sheet prior to jury deliberations, which included a special interrogatory regarding whether [the victim] suffered serious bodily injury as a result of the attempted murder.

We also find persuasive the Commonwealth's point that its failure to provide formal notice of its intent to seek the enhanced sentence did not affect [the defendant's] choice of defense or execution of that defense, considering [he] stipulated to [the victim's] injuries and instead sought to demonstrate that another unknown individual committed the crime. Therefore, the harmless nature of the error precludes a finding that the sentence was illegally imposed.

*Id.* (citations omitted).

We conclude the same is true here. It is undisputed the Commonwealth failed to provide Appellant with formal notice in the charging documents of its intent to prove the victim suffered serious bodily injury as a result of the attempted murder. *See* Information at 1. Nevertheless, Appellant's claim

that he was "ambushed" by the jury interrogatory at the time of deliberations is specious.

First, the affidavit of probable cause averred that the victim was shot in the "chest and hand," transported to the hospital "where he underwent surgery[,]" and was in "critical condition."  Affidavit of Probable Cause 3/4/09 at 2.  Moreover, on the first day of trial, before testimony began, the court asked the Commonwealth's attorney if the aggravated assault charge involved serious bodily injury.  *See* N.T. 7/13/10 at 34.  The Commonwealth's attorney responded, "Yes," and further stated: "I would just request at the end of trial that there be a **separate interrogatory on the serious bodily injury in regards to the attempted murder** . . . because it does change the maximum penalty."  *Id.* at 35 (emphasis added).  Appellant did not object.  Thus, before he even presented his defense, Appellant was well aware the Commonwealth intended to prove the victim suffered serious bodily injury as a result of the attempted murder.

Additionally, Appellant did not question the victim concerning the extent of his injuries, nor did he object when the Commonwealth moved to admit the victim's medical records into evidence.  *See* N.T., 7/14/10, at 191-205 (Appellant's cross-examination of the victim); N.T., 7/16/10 at 86-87 (Commonwealth moved medical records into evidence).  Although Appellant's trial counsel — Geoffrey Kilroy, Esquire — did object when the jury requested a copy of the victim's medical records during deliberations, he did so only to the extent that the records "contain numerous amounts of hearsay about who

said what about what[.]" N.T., 7/19/10 at 85. However, Attorney Kilroy agreed that there was "really [no] doubt that" the victim suffered serious bodily injury. *Id.* at 86. Thus, counsel for all parties agreed to provide the jury with a summary of the medical records. *See id.* at 89.

Lastly, the trial court instructed the jury there would "be one question that [it would] have to answer in connection with the charge of attempted murder" — that is, "Do you find that serious bodily injury was caused to [the victim]?" N.T., 7/19/10, at 81-82. Attorney Kilroy did not object to either the instruction or the verdict sheet. As noted *supra*, the jury responded, "Yes," to that special interrogatory question.

Accordingly, we conclude the facts of this case are nearly identical to those presented in *King*. Although the Commonwealth should have notified Appellant in the charging documents that it intended to prove he committed attempted murder with serious bodily injury, we conclude the failure to do so was harmless error. Significantly, the jury, itself, specifically found the victim suffered serious bodily injury. Moreover, the Commonwealth stated on the record **before trial** that it intended to request a special interrogatory on that exact issue, and Appellant did not challenge the victim's injuries or medical records. Thus, under *King*, Appellant is entitled to no relief on this claim.

Nor do we find that this Court's decision in *Bickerstaff*, *supra*, compels a different result. Appellant maintains that the facts of his case are "completely identical" to those in *Bickerstaff*, such that he is "entitled to the same relief[,]" namely, remand for resentencing. *See* Appellant's

Resentencing Brief at 19. What Appellant fails to acknowledge, however, is the procedural posture of **Bickerstaff** — an appeal from an order denying PCRA relief on a claim on **ineffective assistance of counsel**. This Court opined:

> [T]he Commonwealth charged [the defendant] with only attempted murder generally and did not include the element of serious bodily injury in the criminal complaint or information. The Commonwealth also failed to put [the defendant] on notice that the Commonwealth intended to prove attempted murder/serious bodily injury at trial. The Commonwealth did not prosecute [the defendant] for attempted murder/serious bodily injury. Furthermore, the court did not instruct the jury on serious bodily injury related to the attempted murder offense. Instead, the court gave a jury instruction only on serious bodily injury related to aggravated assault. Here, [the defendant] was essentially ambushed with the verdict sheet's special interrogatory that raised for the first time a question about serious bodily injury in connection with attempted murder. Prior to the interrogatory, [he] had no warning that there was even an issue of serious bodily injury associated with attempted murder. The charges, complaint, information, and jury instructions for attempted murder made no mention of associated serious bodily injury. Absent more, this surprise interrogatory was not enough to put [the defendant] on notice to defend against attempted murder/serious bodily injury.
>
> Due to this lack of notice and [the defendant's] resultant inability to defend, **counsel should have objected to the interrogatory before the jury deliberated**. Counsel had no rational basis for failing to object to the interrogatory, given the lack of notice, and counsel's failure to object prejudiced [the defendant], because it caused [him] to endure a conviction for attempted murder with serious bodily injury and set [him] up to face a maximum sentence of 40 years for that offense, rather than 20 years for attempted murder generally. **Moreover, when the court imposed the enhanced sentence for attempted murder/serious bodily injury, based solely on the jury's response to the interrogatory, counsel again failed to object. Thus, we agree with [the defendant's] contention that trial counsel was ineffective for failing to protect [him]**

**from the sentence enhancement for attempted murder/serious bodily injury.**

*Id.* at 997–98 (emphases & paragraph break added; citations omitted).

Here, Appellant raises his claim on direct appeal following his resentencing hearing — not as an allegation of trial counsel's ineffectiveness on PCRA review. Thus, at this juncture, trial counsel's failure to object to the interrogatory waives the claim for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Moreover, as explained above, the *de facto* notice Appellant received in the present case is similar to the notice the defendant received in *King*, and more than that provided to the defendant in *Bickerstaff*. Thus, we find *King* controlling.

With regard to Appellant's assertion that he should be discharged because the trial court lacked subject matter jurisdiction when the Commonwealth did not include the charge of attempted murder causing serious bodily injury in his information,[16] the *King* Court rejected that same argument. *See King*, 234 A.3d at 557 n.9. The Supreme Court explained:

> [T]he *Apprendi* violation herein would, at most, deprive the court of the ability to sentence [the defendant] to an enhanced sentence. It would not divest the trial court of the jurisdiction to sentence [the defendant] for the unenhanced attempted murder charge of which he plainly had formal notice. . . .

*Id.*

---

[16] Appellant's Resentencing Brief at 30.

Thus, Appellant's challenges to the trial court's authority to sentence him pursuant to Section 1102(c) fail.

**(A)(3)  RESTITUTION**

In his next issue, Appellant insists the trial court illegally imposed restitution.  *See* Appellant's Resentencing Brief at 15.  He contends the trial court failed to "order the 'Method' of payment" as required by 18 Pa.C.S. § 1106(c)(2)(ii), and "ordered payment to entities who are not 'victims[.]'" *Id.* at 15-16.  Appellant also maintains the Assistant District Attorney "personally increased the victim's medical costs" without supporting documentation.  *Id.* at 16-17.

Restitution is governed by Section 1106 of the Crimes Code.  Section 1106(c) requires the trial court to order "full restitution" to "the victim" or victims, "[r]egardless of the current financial recourses of the defendant," so that they are provided with "the fullest compensation for the loss."  18 Pa.C.S. § 1106(c)(1)(i).  A "victim" is defined as, *inter alia*, "[a] direct victim[, and a] parent . . . of a child who is a direct victim[.]"  *See* 18 Pa.C.S. §§ 11.103, 1106(h).  A "direct victim" is defined as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury . . . ."  18 P.S. § 11.103.  In addition, the statute mandates that "[a]t the time of sentencing, the court shall specify the amount **and method** of restitution."  18 Pa.C.S. § 1106(c)(2) (emphasis added).  The court may order restitution to be paid "in a lump sum,

by monthly installments or according to such other schedule as it deems just."

18 Pa.C.S. § 1106(c)(2)(ii).

We note that a challenge to an order of restitution may raise either a legality or discretionary sentencing claim:

> [A] challenge to the legality of sentence is presented when the defendant claims that the trial court lacked statutory authority to impose restitution because the Commonwealth failed to establish one or more of the requirements of section 1106(a). Conversely, where the Commonwealth has established each element of § 1106(a), *i.e.*, the victim suffered loss to person or property directly caused by the specific crime committed by the defendant, a claim that the restitution order is excessive implicates the discretionary aspects of sentencing.

***Commonwealth v. Muhammed***, 219 A.3d 1207, 1212 (Pa. Super. 2019) (citations & quotation marks omitted).

Here, Appellant's argument consists of both a legality and discretionary challenge. His assertion that the court awarded restitution to entities that were not proper "victims" and failed to order the "method" of payment raise legality of sentencing issues pertaining to the court's statutory authority to impose restitution. *See Muhammed*, 219 A.3d at 1212. Although he raises these illegal sentencing claims for the first time in this appeal, they are not waived. *See id.* at 1211 (challenge to legality of sentence can never be waived).

However, his assertion that the costs of the victim's medical expenses presented by the Commonwealth were excessive implicates the discretionary aspects of his restitution sentence. Because Appellant failed to challenge the

restitution amount at his resentencing hearing or in in his post-sentence motion, that claim is waived for our review. **See** Pa.R.Crim.P. 720.

Nevertheless, we are constrained to conclude that the order of restitution imposed by the trial court at Appellant's 2018 resentencing hearing was illegal. First, as Appellant maintains, the restitution amount requested by the Commonwealth included payment to the "Firearms Identification Unit" for "a laboratory fee" ($135) and the cost for "the T-Mobile custodian of records" for their testimony regarding "phone records in this case" ($15.45). **See** N.T., 10/8/10, at 39. Neither of these entities constitute a "victim" as defined in the Crimes Code. Thus, the order awarding "restitution" to these entities was illegal.[17]

Moreover, we are also constrained to agree with Appellant that the trial court's failure to specify the "method of restitution" at the resentencing hearing, renders his restitution sentence illegal. The text of the statute is clear: "At the time of sentencing the court **shall specify** the amount and method of restitution." 18 Pa.C.S. § 1106(2) (emphasis added). This "method" may include a lump sum payment or monthly installments. **See** 18 Pa.C.S. § 1106(2)(ii). Although we recognize Appellant's lengthy term of

---

[17] We note the trial court did not provide any further discussion of the restitution sentence at the 2018 resentencing hearing. It simply "reorder[ed] restitution" in the same amount as the original sentence. **See** N.T., 4/9/18, at 31.

imprisonment renders the restitution order superfluous at the present time, the trial court is required by statute to specify how restitution is to be paid.

Therefore, we vacate Appellant's April 2018 judgment of sentence with respect to the restitution order, and remand to permit the trial court to impose a new restitution order which complies with Section 1106. **See Commonwealth v. Gentry**, 101 A.3d 813, 819 (Pa. Super. 2014) (holding proper remedy following determination that restitution award was not to discharge defendant from restitution, but to provide trial court with opportunity "to impose a new restitution order").

### (A)(4)  CONSIDERATION OF JUVENILE STATUS

In his penultimate issue concerning his resentencing, Appellant argues his sentence is illegal because the trial court stated that it need not consider his "juvenile status" because he was not facing a life sentence.  Appellant's Resentencing Brief at 22.  He insists the court ignored the holdings of **Miller v. Alabama**, 567 U.S. 460 (2012),[18] and **Jones v. Mississippi**, 141 S.Ct. 1307 (U.S. 2021),[19] that "youth matters" and "must be considered as a mitigating sentencing factor."  Appellant's Resentencing Brief at 22-23

---

[18] **See Miller**, 567 U.S. at 465 (holding "**mandatory** life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'") (emphasis added).

[19] **See Jones**, 141 S.Ct. at 1318-19 (holding "a separate factual finding of permanent incorrigibility is **not required** before a sentencer imposes a life-without-parole sentence on a murderer under 18") (emphasis added).

(citations omitted). He insists the court's statement at his resentencing hearing that his "juvenile status did not come into it's [sic] consideration makes [his] sentence . . . illegal[.]" *Id.* at 25.

Although Appellant frames his issue as a challenge to the legality of his sentence, he is, in fact, challenging the discretionary aspects of his sentence — namely, the trial court's purported failure to consider the mitigating factor of his youth. *See Jones*, 141 S.Ct. at 1315, 1316 (explaining *Miller*, *supra*, "repeatedly described youth as a sentencing factor akin to a mitigating circumstance" and "did not require the sentencer to make a separate finding of permanent incorrigibility before imposing" a sentence of life-without-parole on a juvenile defendant). It is well-settled that before we may consider a discretionary aspects of sentencing claim,

> we must first determine whether [the defendant] has done four things: (1) filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) preserved the issue at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) included a Pa.R.A.P. 2119(f) statement in his brief; and (4) set forth a substantial question that his sentence is not appropriate under the Sentencing Code.

*Commonwealth v. Lynch*, 242 A.3d 339, 346 (Pa. Super. 2020), *appeal denied*, 252 A.3d 1072 (Pa. 2021).

In the present case, Appellant properly filed both a timely post-sentence motion and a timely notice of appeal. *See id.* Although his brief does not include the requisite Pa.R.A.P. 2119(f) concise statement of reasons relied upon for allowance of appeal, the Commonwealth did not object to the omission; accordingly, we decline to find the claim waived. *See*

*Commonwealth v. Cramer*, 195 A.3d 594, 610 n.7 (Pa. Super. 2018).

Therefore, we must determine whether Appellant has raised a substantial

question for our review.

An appellant "presents a substantial question when he sets forth a

plausible argument that the sentence violates a provision of the sentencing

code or is contrary to the fundamental norms of the sentencing process."

*Commonwealth v. Conte*, 198 A.3d 1169, 1174 (Pa. Super. 2018) (citation

omitted). However, "this Court repeatedly has held that a claim of inadequate

consideration of mitigating factors does not raise a substantial question for

our review." *Commonwealth v. Crawford*, 257 A.3d 75, 79 (Pa. Super.

2021) (citation omitted). *See also Commonwealth v. Cruz-Centeno*, 668

A.2d 536, 545 (Pa. Super. 1995) ("[A]n allegation that a sentencing court

failed to consider or did not adequately consider certain factors does not raise

a substantial question that the sentence was inappropriate.") (citation &

quotation marks omitted). Therefore, Appellant's claim that the trial court

failed to properly consider his youth as a mitigating factor does not present a

substantial question for our review.

Nevertheless, we note that Appellant's claim is premised upon a

misapprehension of the trial court's comments at the resentencing hearing.[20]

---

[20] "Sentencing is a matter vested in the sound discretion of the sentencing judge" which an appellate court will not disturb "absent an abuse of discretion." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted).

Representing himself *pro se* at the hearing, Appellant argued that the trial court should take into consideration the fact that he was a juvenile when he committed the shooting and cited United States Supreme Court decisions involving challenges to sentences for juvenile offenders convicted of first-degree murder. *See* N.T., 4/9/18, at 21-24. He emphasized that those decisions discussed how juvenile offenders are "highly vulnerable to peer pressure and negative influence" but have "greater prospects for reform making them less deserving of the most severe punishments." *Id.* at 23.

In re-imposing the standard range sentence[21] of 20 to 40 years' imprisonment, the trial court "incorporate[ed] by reference the testimony from the [October 2010] sentencing hearing which included the testimony of the mother and impact on the victim[.]" N.T., 4/9/18, at 29. The court also noted the victim's injuries were "severe, numerous, and life-altering[,]" emphasizing the sentence imposed "reflects the seriousness of the offense[,] will promote respect for the law and provide just punishment for the offense." *Id.* Regarding Appellant's juvenile status, the trial court commented:

> [Appellant] argues that he should be treated like the juveniles who have been sentenced to life imprisonment and who are now having their sentences reviewed. [Appellant] was not sentenced on a homicide case, this was not a life sentence where [his] juvenile status would be taken into consideration. I have read [Appellant's] document called motion for court to take judicial notice of mitigating sentencing factors. [Appellant] was, in fact, 17 years and ten months [old at the time of the crime]. He was very close to being 18 years old and . . . this was a crime

---

[21] *See* N.T., 10/8/10, at 46; N.T. 4/9/18, at 29.

that [he] deliberately participated in and was the person who shot [V]ictim numerous times.

So I'm reimposing the same sentence of 20 to 40 years on the charge of attempted murder. . . .

*Id.* at 29-30.

Therefore, the trial court did not refuse to consider Appellant's juvenile status as Appellant now claims on appeal. Rather, the court rejected Appellant's argument that he should be treated like those juvenile offenders who were convicted of first-degree murder and sentenced to either death or life imprisonment without the possibility of parole. Appellant raised a similar claim in the direct appeal from his October 2010 sentencing, which a panel of this Court rejected. Indeed, we explained that the United States Supreme Court decisions concerning the sentencing of juvenile offenders did not "suggest[ ] that a . . . sentence of 20 – 40 years' incarceration is an inappropriate penalty for a 17 year old who formed the intent to kill, acted on that intent, and then only fell short of committing first degree murder by the miracle of modern medicine[.]" **Willis**, 470 EDA 2011 (unpub. memo. at 9). Accordingly, Appellant's challenge to the discretionary aspects of his sentence fails.

### (A)(5)  CREDIT FOR TIME SERVED

In his final claim on direct appeal from resentencing, Appellant insists he should receive credit for time served on house arrest pursuant to 42 Pa.C.S.

§ 9760 ("Credit for Time Served").[22]  *See* Appellant's Resentencing Brief at 26.  Although he acknowledges that the Pennsylvania Supreme Court, in ***Commonwealth v. Kyle***, 874 A.2d 12 (Pa. 2005), "excluded all forms of house arrest from the statutory definition of custody" for purposes of time credit, Appellant insists that "holding violates the law."  Appellant's Resentencing Brief at 26.

In ***Kyle***, our Supreme Court explicitly held:  "Today, we make clear that time spent on bail release, subject to electronic monitoring, **does not qualify as custody** for purposes of Section 9760 credit against a sentence of incarceration."  ***Kyle***, 874 A.2d at 20 (emphasis added).  The Court further explained:  "Incarceration in an institutional setting is different in kind, not in mere degree, from 'confinement' to the comforts of one's home.  ***Id.*** at 22.

While Appellant would have us determine that ***Kyle*** was wrongly decided, we emphasize:

> As an intermediate appellate court, we generally lack[ ] the authority to determine that [the Supreme] Court's decisions are no longer controlling.  Instead, we are duty-bound to effectuate [the Supreme] Court's decisional law. . . .

***Commonwealth v. Brensinger***, 218 A.3d 440, 457 (Pa. Super. 2019) (*en banc*) (citations & quotation marks omitted).  ***See also Bell v. Willis***, 80 A.3d 476, 479 (Pa. Super. 2013) ("As an intermediate appellate court, this Court is

---

[22] An "issue regarding credit for time served involves the legality of sentence[;]" therefore, "our standard of review is *de novo*, and our scope of review is plenary."  ***Commonwealth v. Nobles***, 198 A.3d 1101, 1106 (Pa. Super. 2018).

obligated to follow the precedent set down by our Supreme Court.") (citation omitted). Therefore, even if we agreed with Appellant's contention — which we do not — we would be precluded from granting relief.

## (A)(6) CONCLUSION − RESENTENCING APPEAL

Accordingly, at Docket No. 1621 EDA 2021, we vacate the April 9, 2018, judgment of sentence with respect to the order of restitution, and remand for further proceedings. In all other respects, we affirm.[23]

## III. PCRA APPEAL (DOCKET NO. 2034 EDA 2021)

At Docket No. 2034 EDA 2021, Appellant raises the following claims concerning the trial court's denial of his 2020 PCRA Petition:

A. Did not the [trial] court violate statutory law when it deemed Appellant's PCRA petition untimely instead of premature, although Appellant's judgment of sentence was not yet final, and one year had not expired as required by 42 Pa.C.S. § 9545(b)(1), (3)?

B. Did not the [trial] court err when it held that Appellant's ineffective assistance of counsel claim, after resentencing, did not amount to a challenge to an illegal sentence where Appellant's counsel failed to protect Appellant from an illegal sentence?

Appellant's Brief (2034 EDA 2021) (Appellant's PCRA Brief) at 4.[24]

---

[23] We decline Appellant's request to publish the disposition of the appeal at Docket No. 1621 EDA 2021. **See** Appellant's Resentencing Brief at iii-iv.

[24] We have reordered Appellant's claims for ease of disposition.

## (B)(1) PCRA REVIEW

Our review of an order denying PCRA relief is well-settled. "[W]e examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Mitchell*, 141 A.3d 1277, 1283–84 (Pa. 2016) (citation and quotation marks omitted). Moreover, we note that the statutory requirement that a PCRA petition be filed within one year of the date the judgment of sentence becomes final is a "jurisdictional deadline" and a PCRA court may not ignore the untimeliness of a petition to address the merits of the issues raised therein. *Commonwealth v. Whiteman*, 204 A.3d 448, 450 (Pa. Super. 2019), *appeal denied*, 216 A.3d 1028 (Pa. 2019). *See also* 42 Pa.C.S. § 9545(b)(1).

## (B)(2) TIMELINESS OF PETITION

Appellant argues the PCRA court erred in dismissing his 2020 PCRA Petition as untimely filed, rather than dismissing it as premature. Appellant's PCRA Brief at 13. He acknowledges that he was "statutorily barred" from filing a timely PCRA petition following his April 2018 resentencing until that judgment of sentence was final. *See id.* at 13-14. We agree.

Appellant's original judgment of sentence was final on October 7, 2013, the date the United States Supreme Court denied Appellant's petition for writ of *certiorari* following his direct appeal. As noted *supra*, he filed a timely PCRA petition, and was granted relief in part — that is, a new sentencing hearing. However, the court denied relief on Appellant's remaining collateral

- 34 -

claims, and this Court affirmed that ruling on appeal. *See Willis*, 155 EDA 2018. Therefore, for purposes of PCRA review, any **trial-based** claims Appellant seeks to pursue are now untimely. *See* 42 Pa.C.S. § 9545(b)(1) (any PCRA petition "shall be filed within one year of the date the judgment becomes final"). The fact that Appellant received relief limited to resentencing does not provide him with the opportunity to collaterally challenge his underlying convictions for a second time. As this Court explained in *Commonwealth v. McKeever*, 947 A.2d 782 (Pa. Super. 2008),

> [A] successful first PCRA petition does not "reset the clock" for the calculation of the finality of the judgment of sentence for purposes of the PCRA where the relief granted in the first petition neither restored a petitioner's direct appeal rights nor disturbed his conviction, but, rather, affected his sentence only. We reached this conclusion because the purpose of the PCRA is to prevent an unfair conviction.

*Id.* at 785.

However, to the extent Appellant challenges his **2018 resentencing**, he is statutorily ineligible for PCRA relief until **that** judgment of sentence is final. *See Commonwealth v. Smith*, 244 A.3d 13 (Pa. Super. 2020) ("[A] PCRA petition may **only** be filed after an appellant has waived or exhausted his direct appeal rights.") (citation omitted). Although we address Appellant's direct appeal from resentencing in this memorandum, his judgment of sentence will not be final until "the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *See* 42 Pa.C.S. § 9545(b)(3). Thus, because this petition was filed

while his direct appeal from resentencing is still pending, we quash this appeal without prejudice to Appellant to file a timely PCRA petition when his direct appeal is final, limited solely to claims related to his 2018 resentencing. **See Commonwealth v. Lesko**, 15 A.3d 345, 366 (Pa. 2011) (petitioner who received federal habeas relief on sentencing was not permitted to "revive the claims that expired once the . . . verdict of guilt became final[;]" petitioner's "'right' to first petition PCRA review [was] necessarily confined to that part of the final Pennsylvania judgment that was disturbed by the federal habeas proceedings.").

## (B)(3)  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Although Appellant concedes his PCRA petition is premature, he nonetheless argues that the trial court erred in determining his ineffective assistance of counsel claim — related to the failure of counsel to object to the imposition of a 20 to 40 year sentence for attempted murder causing serious bodily injury when he was not charged with that crime — is a "trial error," rather than a sentencing error. **See** Appellant's PCRA Brief at 11.  He maintains that this Court's unpublished decision in **Fantauzzi**[25] is controlling. **Id.** at 10-11.  We disagree.

---

[25] Non-precedential decisions of this Court filed after May 1, 2019, "may be cite for their persuasive value."  Pa.R.A.P. 126(1)-(2).  **Fantauzzi** was filed on May 22, 2019.

In *Fantauzzi*, the defendant was charged with, *inter alia*, attempted murder following a shooting. *See Fantauzzi*, 19 EDA 2018 (unpub. memo. at 1-2). Neither the criminal complaint nor the information notified the defendant that the Commonwealth intended to prove that the victim suffered serious bodily injury. *Id.* at 2. Although trial counsel entered into a stipulation that the victim suffered serious bodily injury, the court did not instruct the jury to render a finding on that issue, or include a relevant interrogatory on the verdict sheet. *See id.* at 2-3. Following his conviction, the defendant was sentenced to a term of 15 to 30 years' for attempted murder causing serious bodily injury. *Id.* at 3. He also received mandatory minimum sentences for several of his other convictions. *Id.*

Following the United States Supreme Court's decision in *Alleyne*, the defendant sought, and was granted collateral relief in the form of a new sentencing hearing. *Fantauzzi*, 19 EDA 2018 (unpub. memo. at 4). Relevant herein, the trial court reimposed the same term of 15 to 30 years' imprisonment for attempted murder causing serious bodily injury. *Id.* The defendant subsequently filed a timely PCRA petition following the resentencing, alleging, *inter alia*, that **resentencing counsel** was ineffective for failing to object to the imposition of his illegal sentence for attempted murder causing serious bodily injury. *Id.* at 9. The PCRA court denied relief.

On appeal, a panel of this Court concluded that the Commonwealth failed to properly notify the defendant of its intent to prosecute him for attempted murder with serious bodily injury, and trial counsel's stipulation

was insufficient to "put [the defendant] on notice . . . that he would be exposed to an enhanced sentence[.]" *See Fantauzzi*, 19 EDA 2018 (unpub. memo. at 16-17). Accordingly, the panel found:

> [The defendant's] lack of notice and resultant inability to defend is apparent on the face of the record, and **resentencing counsel** should have brought this illegal sentence to the attention of the resentencing court and/or objected when the resentencing court re-imposed the enhanced sentence of 15 to 30 years' incarceration for attempted murder. **Resentencing counsel** had no rational basis for failing to raise a challenge to the illegal sentence, given the lack of notice. Further, **resentencing counsel's failure to object at resentencing** prejudiced [the defendant], because it left [him] exposed to an enhanced maximum sentence for that offense, which he received in violation of *Apprendi*, *supra*, instead of the 20-year maximum for attempted murder generally. **Thus, we conclude resentencing counsel was ineffective** for failing to protect [the defendant] from the illegal sentence enhancement he received for attempted murder/serious bodily injury.

*Id.* at 17 (citation omitted & emphases added). Thus, this Court reversed the order denying PCRA relief, vacated the judgment of sentence, and remanded for resentencing without the attempted murder enhancement. *See id.* at 20.

Appellant fails to acknowledge that the *Fantauzzi* Court granted the defendant relief based upon **resentencing counsel's** ineffectiveness for failing to object to the enhanced sentence. In the present case, Appellant represented himself, *pro se*, at the April 2018 resentencing hearing. Although he had a constitutional right to do so, when he so chooses, he cannot "revive defaulted trial claims by alleging his own ineffectiveness[.]" *See Commonwealth v. Blakeney*, 108 A.3d 739, 749 (Pa. 2014). Accordingly, while Appellant still has the right to file a PCRA petition after his judgment of

sentence following resentencing is final, he cannot assert his **own ineffectiveness** for failing to object to the imposition of an enhanced sentence for attempted murder causing serious bodily injury.[26]

## (B)(4)  CONCLUSION – PCRA APPEAL

Accordingly, we conclude the trial court had no jurisdiction to entertain Appellant's 2020 PCRA Petition filed while his judgment of sentence following resentencing was not final.  Thus, we quash the appeal at Docket No. 2034 EDA 2021.

At Docket No. 1621 EDA 2021, judgment of sentence vacated, in part, and remanded for resentencing limited to restitution.  Jurisdiction relinquished.

At Docket No. 2034 EDA 2021, appeal quashed.  Jurisdiction relinquished.

---

[26] Moreover, as noted above, any challenges to trial counsel's ineffective assistance are now untimely.  **See Williams**, 151 A.3d at 625.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2023